540 P.2d 1277

Nancy Katherine LAKS (Eliot), Appellant,

v.

Henry LAKS, Appellee.

No. 2 CA–CIV 1874.

Court of Appeals of Arizona, Division 2.

Oct. 8, 1975.

Heather Sigworth, Tucson, for appellant.

Knez, Glatz & Crites, P. C. by Nick Knez and David F. Cooper, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

This is an appeal from a superior court order, a portion of which constituted an injunction against appellant ordering her ". . . to forthwith reinstate the surname of 'LAKS' for the three minor children of the parties, to comply with the regularly-issued birth certificates, governmental, medical, and prior school records of said children."[1] The remainder of the order, which arose out of an action by appellee against appellant for her alleged failure to comply with the property settlement agreement, is not contested.

The question for review as framed by appellant is:

"Where a marriage has been dissolved, and custody of a minor child is in the mother, does a non-custodial father have the right to prevent the custodial mother from appending her own surname to the children's patronymic surname without a showing that the use of the hyphenated form is contrary to the best interests of the children?"

Appellant, in a memorandum filed in the proceedings below, admitted that she had, without appellee's consent, changed the surname of the three minor children of the parties for school and other purposes to that of "Eliot-Laks", Eliot being her maiden name.

Appellant mounts a two-pronged attack. She first contends that she has an absolute right co-equal with that of the father to give the children her maiden name and

---

1. We note that the order granting the injunction in this case, contrary to Rule 65(h), Arizona Rules of Civil Procedure, 16 A.R.S., sets forth no reason for its issuance. Appellant has not, however, made this an issue on appeal and the failure to comply with the foregoing rule does not render the order void. See, Wright & Miller, Federal Practice & Procedure, Vol. 11, p. 538; *Shannon v. Retail Clerks, Int'l Protective Ass'n*, 128 F.2d 553, 555 (7th Cir. 1942).

that the failure of the court to so hold, constitutes a classification based on·sex contrary to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. If this contention fails, she argues that the burden of proof should have been upon the father to show that the change of name was not in the best interests of the children.

The first question we must answer is whether the father has standing to ask for injunctive relief.

The case of *Application of Shipley,* 26 Misc.2d 204, 205 N.Y.S.2d 581 (1960) contains a short history of the use of a surname. Surnames were not used in England until the Norman Conquest and came into general use only toward the end of the fourteenth century, after Henry VIII established regulations governing the recording of births, marriages and deaths. About that time they became hereditary, but only by custom, and the custom has never ripened into a rule of law.

■■ Under the common law a person had a right to change his name without legal formality. *State v. Carroll,* 21 Ariz. App. 99, 515 P.2d 1197 (1973). In the absence of a statutory restriction, one may lawfully change his name without resort to any legal proceedings. *Mark v. Kahn,* 333 Mass. 517, 131 N.E.2d 758 (1956). Statutes such as A.R.S. Sec. 12–601 and Sec. 12–602 merely affirm and are in aid of the common law rule. They do not repeal the common law by implication or otherwise, but afford an additional method of affecting a name change. *Re Taminosian,* 97 Neb. 514, 150 N.W. 824 (1915); *Smith v. United States Casualty Co.,* 197 N.Y. 420, 90 N.E. 947 (1910); *Laflin & Rand Powder Co. v. Steytler,* 146 Pa. 434, 23 A. 215 (1892).

A common law right of a minor to change his name without legal formality has been recognized. *Doe dem. Luscombe v. Yates,* 5 B. & Ald. 544, 106 E.Rep. 1289 (1882); *Application of Shipley,* supra; *In re Useldinger,* 35 Cal.App.2d 723, 96 P.2d 958 (1939) [2]; *Bruguier v. Bruguier,* 12 N.J.Super. 350, 79 A.2d 497 (1951); *Marshall v. Marshall,* 230 Miss. 719, 93 So.2d 822 (1957); *Kay v. Kay,* Ohio Com.Pl., 51 Ohio O. 434, 112 N.E.2d 562 (1953).

■ In order for a minor to effectuate a common law change of name he must be of sufficient age and maturity to make an intelligent choice. *Mark v. Kahn,* supra; *Application of Shipley,* supra.

■ What standing does the father have to enjoin the use of a different name? The interest of the father in having his child bear his surname has been described as one of "inherent concern", *Robinson v. Hansel,* Minn., 223 N.W.2d 138 (1974); or a "natural", "fundamental", "primary", or "time honored" right. But is it a legal right? Texas holds that the father has an interest protected by the Fourteenth Amendment to the United States Constitution, however, Georgia holds that the interest of the father is not a property interest entitled to constitutional protection but merely a custom of persons to bear the names of their parents. *Fulghum v. Paul,* 229 Ga. 463, 192 S.E.2d 376 (1972). We agree with the Georgia courts. Although hereditary surnames are customary, that custom has never amounted to a common law legal right.

■ Whatever the nature of the father's interest, courts have generally recognized that the father has a protectible interest in having his child bear the parental surname in accordance with the usual custom, even though the mother may have been awarded custody of the child. *Robinson v. Hansel,* supra; and see generally Annot. 53 A.L. R.2d 914.

■ The reported cases involve situations where the mother-custodian attempts to change the name of the children to that

2. But see, *Application of Trower,* 260 Cal.App. 2d 75, 66 Cal.Rptr. 873 (1968) wherein the court, without citing authority, makes the statement that at common law a minor did not have the right to change his name.

of the step-father, *Application of Shipley,* supra; or attempts to add the name of the step-father to the surname, *Robinson v. Hansel,* supra. In one case, *Ouellette v. Ouellette,* 245 Or. 138, 420 P.2d 631 (1966), the mother unsuccessfully tried to change the name to "O'Let". These cases recognize that when there is a divorce and the mother is given custody of the children, the bond between the father and his children in such circumstances is tenuous at best and if their name is changed, that bond may be weakened, if not destroyed. Therefore, a rule has developed that a change of name will not be authorized against the father's objection, merely to save the mother and child inconvenience or embarrassment. However, where the children's substantial interests require a change of name, as where the father's misconduct has been such as to justify a forfeiture of his rights or where his name is possibly deleterious to the child, the change may be permitted. Annot. 53 A.L.R.2d 914, 915.

Courts also look to the natural and appropriate desire of the father to have his children bear and perpetuate his name, *Clinton v. Morrow,* 220 Ark. 377, 247 S. W.2d 1015 (1952) and the desirability of the child knowing his parentage. *Re Epstein,* 121 Misc. 151, 200 N.Y.S. 897 (1923).

We have found no reported cases where the mother has attempted to add her maiden name to the given surname. This brings us to the question of what interest the mother has in her children's name. She cannot point to tradition and custom as can the father. Appellant claims that the custom of using the father's surname was a result of the subservience of women in society; the inequality of the sexes. Thus, she maintains, elimination of the inequality between the sexes gives her an interest equal to that of the father and to recognize only the interest of the father is an impermissible classification based on sex under the holdings of *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) and *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). Therefore, she argues, the name "Eliot-Laks" is an appropriate recognition of the interests of both parents in a child's name.

We believe there is merit in this contention. However, it must be remembered that what we are concerned with in this case is not the initial naming of the child but a change of name. The persons who have the paramount interest are the children and their best interests are controlling. *Robinson v. Hansel,* supra. It does not appear that the children ever consented to being called "Eliot-Laks". At the time of the hearing their ages were 10, 13 and 14. It would appear that at least two of the children might have been of sufficient age and maturity to make an intelligent and decisive choice. Appellant's memorandum, filed with the trial court prior to the hearing, specifically stated that the children would not be called as witnesses and the record shows that only appellant and appellee testified.

Appellee made a prima facie case for injunctive relief by showing that the name "Eliot-Laks" was not the name on the children's birth certificates. It was then incumbent upon appellant to go forward with the evidence and show that the name change was in the best interests of the children. Appellant has failed to file with this court the reporter's transcript of testimony. Such being the case, we must presume there was evidence in the record sufficient to sustain the judgment, and that the trial court found it was not in the best interest of the children to effectuate the name change. *Primrock v. Wilson,* 55 Ariz. 192, 100 P.2d 180 (1940).

Affirmed.

KRUCKER and HATHAWAY, JJ., concur.