**Kathleen HAMBY, and the State of Utah, by and through the Utah State Department of Social Services, Plaintiffs and Appellants,**

v.

**Gail JACOBSON, Defendant and Respondent.**

**880026–CA.**

Court of Appeals of Utah.

Jan. 24, 1989.

Priscilla Ruth MacDougall (argued), Kathleen Hamby, Madison, Wis., Mary C. Corporon, Kellie F. Williams, Corporon and Williams, Salt Lake City, for plaintiffs and appellants.

Lynn D. Wardle (argued), Orem, Richard M. Taylor, Spanish Fork, for defendant and respondent.

Before DAVIDSON, BENCH and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Kathleen Hamby (Hamby) appeals from the trial court's order that two of her children bear the surname of their father, from whom Hamby is divorced, rather than her surname. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

Kathleen Hamby and Gail Jacobson are the natural parents of two children, both born out of wedlock. Their first child, named Kelly Lynn Hamby on his birth certificate, was born in June 1983. In November 1983, Hamby married Gail Jacobson (Jacobson) and assumed Jacobson as her surname. After the parties married, they agreed to change Kelly's surname to Jacobson. Although Hamby signed forms changing Kelly's name, the papers were never filed with the State of Utah. Hamby also had a son from a previous marriage who bore the surname Hamby, the surname of Hamby's prior husband.

During their marriage, Hamby became pregnant with the parties' second child. Shortly thereafter, Hamby filed for divorce from Jacobson. The parties executed a stipulation which provided, among other things, that Hamby be awarded custody of the parties' two children and that she resume her pre-marriage name of Hamby. The only issue remaining was whether Kelly and the unborn child should use Jacobson or Hamby as their surname.

On March 14, 1985, Judge J. Robert Bullock held a trial regarding the children's surnames. Jacobson was unable to attend the hearing because of his job. Hamby appeared and testified that Jacobson was verbally and physically abusive to Kelly during the marriage, drunk more often than sober and unwilling to work. Hamby also stated that Jacobson had a reputation in their small town as a fighter and a drinker. In addition, Hamby testified that Jacobson had hit Kelly with a board, causing loss of upward motion in his left eye and that no treatment was available for Kelly's eye. Hamby further testified that Jacobson had not seen Kelly since the parties had separated in October 1984.

When asked why the children should bear the surname Hamby, Hamby testified that if all family members had the same last name, the family members would be closer and more secure. Hamby also said she was raised in a home where the family members had different last names and the name differences adversely affected family security. A school psychologist, Mr. Downey, testified that generally, different surnames in a family disrupt the children's identity with themselves and their family, divide family unity, adversely affect security and could hinder development. How-

ever, Mr. Downey also testified that some children in families with multiple surnames are not adversely affected, and the surname issue should be examined on a case-by-case basis.

The court granted the parties' divorce on April 11, 1985, restored Kathleen Jacobson to her former name of Hamby, permitted Kelly to retain Hamby as his surname, and ordered that the unborn child bear the surname Jacobson. The court stated that either party could file a petition to change Kelly's or the unborn child's name within thirty days of the expected child's birth. The younger child, Kevin, was born on April 13, 1985, two days after the divorce was granted.

After Kevin's birth, Hamby filed a petition to change his surname to Hamby. She relied on her testimony before Judge Bullock to support her claim that Kevin should use the Hamby surname. Jacobson filed a reply and petition, claiming that both Kelly and Kevin should bear his surname because he was their father. On October 24, 1985, Judge Ray Harding, newly assigned to the case, held an informal conference in chambers. Judge Harding stated that the best way to proceed with the case would be by proffers of evidence and that the principal issue was a matter of law. Hamby's attorney proffered that Hamby would testify as follows: that she and her eleven-year-old son used the name Hamby, her name from a prior marriage; that her two-year-old son, Kelly, was named Hamby on his birth certificate and continued to use Hamby; that although Hamby and Jacobson discussed changing Kelly's name to Jacobson, the change was never made; and that she followed the court's prior order that Kevin be given the surname Jacobson. Further, Hamby's attorney proffered that Hamby believed all her children should have the same last name and that it would be in Kelly and Kevin's best interests to bear the name Hamby. Hamby also proffered that Jacobson was unfit and bearing his name might create problems for Kelly and Kevin. Jacobson's attorney proffered that Jacobson would testify that he was not a saint, but his behavior was not so terrible as to require taking his name from the children and further, that Hamby's character and behavior were also negative.

After taking the parties' proffers, the court directed both parties to file memoranda. Attached to Hamby's memorandum was a letter from Richard Parks, the Educational Coordinator of The Spafford School, stating that it is important to all children that they know they are part of a family in all possible ways, both actual and symbolic.

Subsequently, the court ruled that "it is in the best interest of the parties minor children, Kelly Lynn and Kevin D., to be known by the surname Jacobson." The ruling stated as follows:

> The court bases this ruling on the following reasons:
>
> 1) the father-child relationship will be strengthened by the children bearing the name Jacobson while not harming the mother-child relationship,
>
> 2) there is no embarrassment or inconvenience associated with an explanation of why their mother's surname is different since divorce is a common occurrence,
>
> 3) the children are too young to be accustomed to the surname Hamby,
>
> 4) Hamby is not the mother's maiden name,
>
> 5) there is no embarrassment because of defendant's alleged bad reputation, and
>
> 6) the children will always be identified with at least one natural parent by being known as Jacobson.

The court finds unpersuasive plaintiff's arguments that it would be beneficial for Kevin and Kelly to be known by Hamby as their mother and step[brother]. Were custody to change, Kevin and Kelly would be faced with the same situation plaintiff now seeks to avoid. Furthermore, were plaintiff to remarry[,] Kevin and Kelly would again have a surname other than of at least one of their custodial parents. Of paramount concern to the court is the fact that Kevin and Kelly should both bear the same name to avoid any implications of illegitimacy which might arise if asked why

brothers of the same natural father have different last names.

Finally, the court notes that the law provides that the children may petition for a name change if they so desire when they are old enough to make an intelligent decision.

On appeal, Hamby claims that (1) the court erred in utilizing the standard of the children's best interests; and (2) even if that standard is legally correct, the evidence does not support the court's conclusion that use of the surname Jacobson is in the best interests of the children.

## APPROPRIATE TEST FOR CHILD'S NAME CHANGE

Traditionally, legitimate children in the United States have borne their father's surname. *In re Schiffman*, 28 Cal.3d 640, 169 Cal.Rptr. 918, 920–21, 620 P.2d 579, 581–82 (1980); Note, *The Controversy over Children's Surnames: Familial Autonomy, Equal Protection and the Child's Best Interests*, 1979 Utah L.Rev. 303, 306 (hereinafter Utah Note). However, this tradition has been eroded in more recent times, as parents have chosen other methods of naming their children, both legitimate and illegitimate. Simultaneously, women have, with increasing frequency, opted to retain their birth names after marriage, or select a surname other than their husband's. Utah Note, 1979 Utah L.Rev. at 306. Most states, including Utah, have no statutes which dictate a child's surname, and parents may, therefore, select any one of several possible surnames, including the maternal surname, the paternal surname, a combination of the maternal and paternal

surnames or a surname unrelated to either parent.[1] *Id.*

In the trial court proceedings, Jacobson argued that there should be a presumption that the paternal surname be used. Indeed, some courts in the past followed the view that a father has a protectible or primary interest in having his children bear his surname, unless he has forfeited that right by misconduct or neglect. *In re Spatz*, 199 Neb. 332, 258 N.W.2d 814, 815 (1977); *In re Harris*, 160 W.Va. 422, 236 S.E.2d 426, 428–29 (1977). The *Harris* court relied on the "long-standing social convention" that the child bears the father's surname. *Harris*, 236 S.E.2d at 429. That social convention evolved from the common law view that a married woman had "little legal identity apart from her husband's." *Schiffman*, 169 Cal.Rptr. at 920, 620 P.2d at 581. However, our society no longer adheres to the notion that the husband is the sole legal representative of the family, its property and children, and therefore able to unilaterally determine the surname of the couple's children. *Id.* On appeal, however, Jacobson now urges that the trial court applied the appropriate test of the children's best interests.

Hamby, on the other hand, argues that Utah should adopt a rebuttable presumption that the custodial parent's choice of a surname governs. That position was propounded by Justice Mosk of the California Supreme Court in a concurring opinion in *Schiffman*. Mosk reasoned that the custodial parent normally makes decisions regarding such matters as children's health, education and religious upbringing, and that choice of a surname should be similarly handled. *Id.* 169 Cal.Rptr. at 923–24,

---

**1.** The Utah Department of Health, however, has promulgated rules in connection with the issuance of birth certificates and vital statistics, which recognize the parents' right to choose a child's surname and state that if the mother is married, the child usually receives, but is not required to receive, the paternal surname. "Guidelines for Reporting Name of Father and Surname of Child on the Birth Certificate" (revised October 5, 1981); Utah Code Ann. § 26–1–5 (1984). According to the rule, when parents disagree, the sole consideration should be the best interests of the child. However, when a child's mother is not married, she has

considerable latitude in determining her child's surname. Even if she names the father on the birth certificate, she can give the child a surname different from the father's. The Utah Department of Health amended the rule in 1988 to provide that "[i]f the parents disagree on the child's name and they have never married each other or are separated or divorced, the custodial parent shall determine the child's name." Thus, the rule mandates consideration of the child's best interests when the parents are married, but allows a custodial preference in instances of no marriage, separation or divorce.

620 P.2d at 584–85. However, most recent court decisions have both rejected the notion that there is a preference for the paternal name and failed to adopt a preference for custodial parent choice, preferring to follow the rule that a name change request should be granted only if the court finds the name change is in the best interests of the child. *Laks v. Laks,* 25 Ariz. App. 58, 540 P.2d 1277, 1280 (1975); *Schiffman,* 169 Cal.Rptr. at 922, 620 P.2d at 583; *Hamman v. County Court,* 753 P.2d 743, 749 (Colo.1988); *Sullivan v. McGaw,* 134 Ill.App.3d 455, 89 Ill.Dec. 540, 547, 480 N.E.2d 1283, 1291 (1985); *Aitken County Family Serv. Agency v. Girard,* 390 N.W. 2d 906, 908–09 (Minn.App.1986); *Bobo v. Jewell,* 38 Ohio St.3d 330, 528 N.E.2d 180, 184 (1988); *Daves v. Nastos,* 105 Wash.2d 24, 711 P.2d 314, 318 (1985). The issue has not been specifically decided by the Utah appellate courts.

. In *Schiffman,* the court addressed the issue by first noting that the long-standing rule in custody disputes that the mother is the preferred custodian of young children had been abolished in order to equalize the rights of parents. Similarly, laws had been promulgated to eliminate legal distinctions between legitimate and illegitimate children. Laws eliminating such distinctions mean that "[t]he Legislature clearly has articulated the policy that irrational, sex-based differences in marital and parental rights should end and that parental disputes about children should be resolved in accordance with each child's best interest." *Schiffman,* 169 Cal.Rptr. at 921, 620 P.2d at 582. In *Pusey v. Pusey,* 728 P.2d 117 (Utah 1986), the Utah Supreme Court similarly rejected the maternalistic or tender years presumption in child custody cases. The Court noted that the maternal preference violates article IV, section 1 of the Utah Constitution's gender bias prohibition, and also "perpetuates outdated stereotypes." *Id.* at 120. Because the maternal presumption is not based on present day reality, the Court found it fails to truly evaluate the child's best interests. Accordingly, the Court held that instead of arbitrarily applying a maternal presumption, child custody should be determined with

resort to factors focusing on the best interests of the child. *Id.*

■ We find that under the rationale of *Pusey,* a paternal preference for a child's surname is improper, just as would be a preference for the maternal surname. However, we are unwilling to adopt a presumption in favor of the choice of the custodial parent, finding that the best interests of the child test can appropriately include consideration of the custodial situation of the child, as well as other relevant factors. *See Schiffman,* 169 Cal.Rptr. at 922, 620 P.2d at 583. We, therefore, hold that the best interests of the child is the paramount consideration in determining whether a child's name should be changed. *Id.* 169 Cal.Rptr. at 920, 620 P.2d at 581; *Sullivan,* 89 Ill.Dec. at 547, 480 N.E.2d at 1291; *Bobo,* 528 N.E.2d at 184–85.

## APPLICATION OF BEST INTERESTS TEST

■ In determining a child's best interests, courts have considered factors including: 1) the child's preference in light of the child's age and experience, *Daves,* 711 P.2d at 318; 2) the effect of a name change on the development and preservation of the child's relationship with each parent, *Id.;* 3) the length of time a child has used a name, *Daves,* 711 P.2d at 318; *Nellis v. Pressman,* 282 A.2d 539 (D.C.1971), *cert. denied,* 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972); 4) the difficulties, harrassment or embarrassment a child may experience from bearing the present or proposed name, *Schiffman,* 169 Cal.Rptr. at 922, 620 P.2d at 583; *In re Saxton,* 309 N.W.2d 298, 301 (Minn.1981), *cert. denied,* 455 U.S. 1034, 102 S.Ct. 1737, 72 L.Ed.2d 152 (1982); 5) the possibility that a different name may cause insecurity and lack of identity, *In re Spatz,* 258 N.W.2d at 815; and 6) the motive or interests of the custodial parent, *In re Omelson,* 112 Ill.App.3d 725, 68 Ill.Dec. 307, 311, 445 N.E.2d 951, 955 (1983). We believe that these factors and perhaps others may be relevant, but that courts should apply only those factors present in the particular circumstances of each case. *Bobo,* 528 N.E.2d at 185. Further, because the

child's best interests is dependent upon the particular facts in a case, the court should enter findings of fact which state the reasons for granting or denying the application to change the child's name. *See Daves*, 711 P.2d at 318.

We also point out that lip-service to the best interests of the child should not be used as a subterfuge to nevertheless perpetuate the paternal preference. *See* Utah Note, 1979 Utah L.Rev. at 327. That possibility was particularized in *Bobo v. Jewell*, 528 N.E.2d at 184–85, as follows:

> We caution the courts, however, to refrain from defining the best-interest-of-the-child test as purporting to give primary or greater weight to the father's interest in having the child bear the paternal surname. While it may be a custom to name a child after the father, giving greater weight to the father's interest fails to consider that, where the parents have never been married, the mother has at least an equal interest in having the child bear the maternal surname. In these times of parental equality, arguing that the child of unmarried parents should bear the paternal surname based on custom is another way of arguing that it is permissible to discriminate because the discrimination has endured for many years.[2]

In addition, we observe that ascertaining the best interests of a child is a factual, not a legal, determination. This notion has been intimated in Utah decisions involving the best interests of a child in custody and visitation disputes. For example, in *Smith v. Smith*, 726 P.2d 423, 425 (Utah 1986), the Court stated:

> Because the proper adjudication of custody matters "is highly dependent upon personal equations which the trial court is in an advantaged position to appraise," this Court will not overturn a trial court's custody determination on appeal unless the evidence clearly shows that the custody determination was not in the best interests of the child or that the trial

court misapplied applicable principles of law.

Similarly, in *Alexander v. Alexander*, 737 P.2d 221, 223 (Utah 1987), the Court noted that "the task of determining the best interests of the child in a custody dispute is for the trial judge, who has the opportunity to personally observe and evaluate the witnesses." *See Ebbert v. Ebbert*, 744 P.2d 1019 (Utah Ct.App.1987) (visitation dispute). Determination of the child's best interests is the ultimate factual conclusion in a custody case or one involving a child's surname. Traditional appellate principles afford the trial judge great deference in making factual determinations, based in large part on his/her opportunity to observe witnesses. Utah R.Civ.P. 52(a).

In this case, unfortunately, there was scant live testimony, and most of it occurred before Judge Bullock, who did not ultimately decide the issue. Both parties stipulated to proffers of testimony in front of Judge Harding, who encouraged the stipulation by his remark that the principal issue was a question of law, not fact. This was error, as the only legal issue before the court was the appropriate test to apply in the matter. The court correctly determined that the test was the best interests of the children, but incorrectly implied that application of the test to the facts was an exercise designed to arrive at a legal conclusion. As stated in *Fullmer v. Fullmer*, 761 P.2d 942, 945 (Utah Ct.App.1988), when the evidence consists only of proffers to the trial court, the appellate court is "in as good a position to review the proffer as was the trial court, as no assessment of witness credibility occurred below. Therefore, we review the facts and draw our own legal conclusions therefrom." We also note that in cases involving the best interests of a child and competing claims by parents of the child, demeanor and credibility of witnesses is particularly critical, and use of proffers should be discouraged. *Id.* at 945 n. 1.

---

**2.** While this quotation refers to unmarried parents, we think it applies equally to children born to a married couple. We would hope, however naively, that disputes about children's names between spouses in an ongoing marriage would be handled outside of the courtroom.

# FINDING THAT CHILDREN'S BEST INTERESTS REQUIRED PATERNAL SURNAME

## Standard of Review

We now examine the trial court's ultimate finding that it was in the children's best interests to bear the surname Jacobson. We review the trial court's findings under a clearly erroneous standard and will not disturb those findings unless they are against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made. *State v. Walker*, 743 P.2d 191, 193 (Utah 1987).

## Sufficiency of Evidence

█ The court based its best interests finding on several enumerated factors. First, the trial court examined the effect of the name change on the children's relationship with their father and mother. The court found that the children's use of the Jacobson surname would strengthen the father-child relationship and not harm the mother-child relationship. However, the record contains no evidence that use of Jacobson would strengthen the father-child relationship. Further, Mr. Downey's testimony established that use of the Jacobson surname may divide family unity, thus harming the mother-child relationship. Therefore, the evidence indicates that use of Jacobson would adversely affect the mother-child relationship and the court's finding to the contrary is clearly erroneous.

Second, the court found that the children would not suffer embarrassment or inconvenience if their surname were different from their mother's since divorce is a common occurrence. However, there is no support for this proposition in the record. Contrary to the finding, Hamby testified that in her experience, different surnames within a family adversely affect security and family closeness. Mr. Downey stated that different surnames in a family usually disrupt children's identity with themselves and the family, divide family unity, adversely affect security and could hinder development. Mr. Parks's letter, which was attached to Hamby's memorandum, states that it is important for children to know that they are part of a family—both symbolically and actually. Therefore, the clear weight of the evidence is contrary to the court's finding and supports a finding that the children would suffer embarrassment, insecurity, identity problems and have less family unity if they used surnames different from other family members.

Third, the court found that the children were too young to be accustomed to the surname Hamby. Although no evidence was submitted regarding whether changing the children's names at their young age would have any effect upon them, it is fairly obvious that the children would not be especially accustomed to their surnames. In any event, in this case the length of time the children have used their surnames appears to be of little assistance in determining the children's best interests.

The court's fourth reason for ordering the children to bear the name Jacobson was because Hamby is not the mother's maiden name. Although the court correctly stated that Hamby is not the mother's maiden name, the court did not intimate why that fact was relevant to the children's best interests. Therefore, the finding does not support the ultimate conclusion.

The court also found that the children would not be embarrassed to bear the Jacobson surname due to Jacobson's alleged bad reputation. That finding is not only unsupported by the evidence but also against the clear weight of the evidence. Hamby testified that Jacobson has a reputation as a drinker and a fighter, was verbally and physically abusive towards Kelly, and drunk more often than sober. Hamby also testified that Jacobson hit Kelly with a board causing Kelly to lose upward motion in his eye. Jacobson's proffered testimony was that he was not a saint, but his behavior was not so terrible as to justify taking his name from the children. Accordingly, the clear weight of the evidence supports the opposite finding, namely that Jacobson had a reputation that may embarrass children bearing his surname.

The court's sixth finding was that the children, by bearing the name Jacobson, would always be identified with at least one natural parent. The uncontroverted evidence indicated that Hamby did not intend to change her surname even if she remarried. Therefore, although it is logical that the children's use of Jacobson would always identify them with one natural parent, it is also true that use of Hamby as their surname would yield the same result.

The court also found that the children would not benefit from having the same last name as their mother and stepbrother. However, Hamby, Mr. Downey and Mr. Parks testified to the contrary that the children would benefit, from having the same surname as the rest of the family, and there was no evidence to the opposite effect. Therefore, that finding is clearly erroneous.

The court also stated that "were plaintiff to remarry Kevin and Kelly would again have a surname other than at least one of their custodial parents." However, because the unrefuted evidence established that Hamby would not change her name upon remarriage, by bearing the Hamby surname, the children would always bear the same name as one custodial parent. On the contrary, if the children bore the name Jacobson, they would have a name different from either custodial parent and their stepbrother.

Finally, the court found that Kelly and Kevin should have the same surname to avoid implications of illegitimacy since they have the same father. Again, there is no evidence to support that finding, and it is equally true that if all family members bear the Hamby surname, implications of illegitimacy would be unlikely.

### Conclusion

Based on our analysis of the evidence, we find that there was insufficient evidence, as a matter of law, to support the court's order that the children bear the surname Jacobson, and that the clear weight of the evidence established that it is in the best interests of Kelly and Kevin that they bear the surname Hamby.

Reversed and remanded for entry of an order in accordance with this opinion.

BENCH and DAVIDSON, JJ., concur.