Pattie S. CHRISTENSEN, Plaintiff
and Appellant,

v.

Daniel R. CHRISTENSEN, Defendant
and Appellee.

No. 960312–CA.

Court of Appeals of Utah.

June 12, 1997.

Mark K. Stringer, Provo, for Plaintiff and
Appellant,

Daniel R. Christensen, Tacoma, WA, pro se.

Before DAVIS, P.J., and BENCH and JACKSON, JJ.

## OPINION

DAVIS, Presiding Judge.

Pattie Christensen, now known as Pattie Brubaker (Brubaker), appeals the trial court's order that the minor child of Brubaker and Daniel Christensen (Christensen) continue to bear the surname of Christensen. We affirm.

## BACKGROUND

Christensen and Brubaker were married on January 16, 1987 in Springville, Utah. The parties had one child who was born on July 20, 1987. Christensen and Brubaker separated just a few months after the child was born and divorced on May 17, 1990. Brubaker retained custody of the child and Christensen received reasonable visitation rights. The divorce decree did not entitle Brubaker to change the child's surname.

Shortly after the parties' divorce, Christensen moved to Washington state. Brubaker also moved several times since her divorce from Christensen, residing in Oklahoma, Colorado, Florida, and most currently, in Sandy, Utah. Christensen has exercised visitation approximately three to five times per year, with the frequency and length increasing as the child has grown older. This visitation has been exercised with some difficulty, however, due both to Brubaker's purposeful interference[1] and the physical distance between Christensen and the child.

Brubaker married Joseph Brubaker in October 1989 and later moved the court to enter a nunc pro tunc order that effectively granted the divorce between Brubaker and Christensen on June 26, 1989. Brubaker and her current husband are also the parents of a son who bears the surname Brubaker.

When the parties' minor child started learning to write her name, Brubaker taught her to write her surname as Brubaker, as opposed to her legal name of Christensen. When Christensen became aware of this development, he expressed his displeasure and disapproval to Brubaker and requested that this practice cease. Brubaker, however, continued to refer to the parties' child as Brubaker. Whenever Christensen conducted business for his child, e.g., purchasing airline tickets, he used her correct surname of Christensen.

In July 1991, while living in Colorado, Brubaker filed a petition for a change of surname on behalf of the minor child in an attempt to legally change the child's surname to Brubaker. Brubaker retained an attorney and informed her that Christensen could not be located and that he had not paid any child support. Notwithstanding Brubaker's assertions, at the same time Brubaker filed the petition, she and Christensen were involved in litigation in Utah regarding Christensen's petition to modify the amount of child support. Brubaker never informed Christensen of her pending petition. Brubaker's petition was never finalized, apparently due to the attorney's failure to follow through.

Throughout the years, the parties have filed numerous motions for orders to show cause regarding either past due child support or interference with visitation rights. This appeal is based on Brubaker's April 18, 1994 motion for an order to show cause. The motion addressed past due child support, interest on a previous judgment against Christensen, which to that date had remained unpaid, and work-related child care costs. A hearing on Brubaker's motion was held and a subsequent interim order was entered by the court. The interim order resolved only the issue of back child support and reserved the other issues for a future date. Brubaker later requested a hearing on the remaining issues. Although the surname change issue was not initially included in Brubaker's April 18, 1994 motion, at the hearing on Brubaker's continued motion for an order to show

---

1. Brubaker's interference with Christensen's visitation rights has necessitated court intervention which ordered Brubaker to allow Christensen to see the child. Brubaker was previously held in contempt for denying Christensen visitation.

cause, the parties agreed to orally amend the motion to include the issue.

At the hearing, Brubaker argued that the child has used the surname for many years and would suffer from a lack of identity if her surname was different from that of her mother, stepfather, and half brother. Christensen argued that his already tenuous relationship with his child would be further strained if he and the child had different surnames. The trial court ruled in favor of Christensen and ordered that the child retain the surname of Christensen and that Brubaker notify the child's school and church officials of the child's correct surname. Brubaker appeals from the trial court's findings of fact, conclusions of law, and order.

## ISSUE AND STANDARD OF REVIEW

■ The sole issue on appeal is whether the trial court erred in determining that it was in the child's best interest to retain the surname of Christensen. "[W]e observe that ascertaining the best interests of a child is a factual, not a legal, determination." *Hamby v. Jacobson,* 769 P.2d 273, 278 (Utah.Ct.App. 1989). Furthermore, " 'the task of determining the best interests of the child in a [case involving a child's surname] is for the trial judge, who has the opportunity to personally observe and evaluate the witnesses.' " *Id.* (quoting *Alexander v. Alexander,* 737 P.2d 221, 223 (Utah 1987)); *see also* Utah R.Civ.P. 52(a) ("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.").

> [When] examin[ing] the trial court's ultimate finding that it was in the child['s] best interest[ ] to bear the surname [Christensen,] . . . [w]e review the trial court's findings under a clearly erroneous standard and will not disturb those findings unless they are against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made.

*Hamby,* 769 P.2d at 279.

## ANALYSIS

■ The framework within which we decide whether a child's surname should be changed was first articulated in *Hamby.* There, this court held that "the best interests of the child is the paramount consideration in determining whether a child's name should be changed." *Id.* at 277. The court set forth six factors that it regarded as particularly relevant in determining the child's best interests:

> 1) the child's preference in light of the child's age and experience, 2) the effect of a name change on the development and preservation of the child's relationship with each parent, 3) the length of time a child has used a name, 4) the difficulties, harassment or embarrassment a child may experience from bearing the present or proposed name, 5) the possibility that a different name may cause insecurity and lack of identity, and 6) the motive or interests of the custodial parent.

*Id.* (citations omitted). The *Hamby* court recognized that the list of factors was not exhaustive and may not always be relevant to the factual circumstances before the court. *See id.* Therefore, "courts should apply only those factors present in the particular circumstances of each case." *Id.*

Here, the trial court carefully addressed each of the six factors specified in *Hamby.* We will discuss the trial court's findings on each factor in reviewing the ultimate finding that it was in the child's best interest to bear the surname Christensen.

### Child's Preference

■ The trial court first determined whether the child's preference should be considered. The child, who was nine years old at the time of the hearing, did not testify regarding which surname she desired to use. The trial court noted, "Plaintiff claims [the child] has expressed a desire to use the name of 'Brubaker.' Even if this were true, the Court can give little weight to this statement in light of the child's tender age and lack of experience as to the consequences of these matters."

Brubaker argues the trial court erred in refusing to give any weight to the child's preference. However, at no time during the

hearing did Brubaker try to have the child testify, either in open court or privately in the judge's chambers, regarding her preference.[2] *Cf. Laks v. Laks,* 25 Ariz.App. 58, 540 P.2d 1277, 1280 (1975) (stating children had "paramount interest" in name change but were not called to testify, thus, their preference was not considered by court). The child's preference was expressed via Brubaker's self-serving testimony, which the trial judge was free to reject. Here, the trial court had no opportunity to evaluate the ability of the child to express an informed preference. *See id.* (stating although thirteen– and fourteen-year-olds are mature enough to make "intelligent and decisive choice," ten-year-old is not); *Lazow v. Lazow,* 147 So.2d 12, 14 (Fla.Ct.App.1962) (stating twelve-year-old is not sufficiently mature to make "intelligent choice in the matter of his name"); *In re Marriage of Omelson,* 112 Ill.App.3d 725, 68 Ill.Dec. 307, 311, 445 N.E.2d 951, 955 (1983) (stating five-year-old is too young to have independent judgment "and [decision] would be wholly subject to the suggestion and desire of her mother"). *But see In re Saxton,* 309 N.W.2d 298, 301 (Minn.1981) (stating nine– and seven-year-olds are sufficiently mature to make decision regarding their surname). Accordingly, the trial court did not err in refusing to consider the child's preference as to her surname.

### Effect of Name Change on Parental Relationship

The trial court examined next the effect of the name change on the child's relationships with Brubaker and Christensen. The court found that "the nature of this relationship [between the minor child and the Brubakers] would [not] be enhanced by changing ... [the child's] surname from 'Christensen' to 'Brubaker.'" The trial court further found that the name change

> could negatively impact [Christensen's] relationship with his daughter, which is positive but difficult to maintain given the physical distance between [Christensen] and his child and [Brubaker's] efforts to

weaken that bond through continual interference with visitation, the family's minimizing [Christensen's] role in [the child's] life, and by, some could argue, a derogatory reference to him as "sweetie-pie" instead of [the child's] father.

Although the only testimony regarding the negative impact the name change would have on Christensen's relationship with his daughter came from Christensen, we do not find the trial court's findings on this factor unreasonable or clearly erroneous. Additionally, Brubaker's husband testified to his feelings for the child: "[S]he is my daughter and I treat her as such. I treat her equally as I do [my son] and I love her the same." Thus, the trial court's determination that the Brubakers "would continue to love and accept [the child] regardless of her surname" and, accordingly, that their relationship with the child would not be enhanced by the name change, is supported by the record. Therefore, we do not disturb the trial court's findings on this factor.

### Length of Time Used

The trial court found that the length of time the child has been using the surname Brubaker was unclear. Brubaker's testimony indicated that the child used the surname Christensen since she was approximately four years old. At the time of trial, therefore, the child had been using Brubaker for approximately four years. The trial court noted, however, that whenever Christensen conducted business on behalf of the child, he used the name Christensen, and that Brubaker had only recently moved into the Sandy community in the summer of 1995. The trial court then determined that "[t]estimony indicated that [the child] is not likely to be detrimentally affected if her peers or others were to comment on her use of her legal surname."

Under the circumstances here, the trial court's findings are not clearly erroneous. Based on the facts before the court, the length of time the child utilized the name in

---

**2.** At oral argument, counsel for Brubaker claimed that the trial court refused to take the child's testimony or otherwise interview the child regarding her preference. However, after a careful review of the record, we are unable to discern whether or when Brubaker requested that the trial court discuss the matter with the child or that the trial court allow her testimony.

the Sandy community is of marginal significance. *See Hamby,* 769 P.2d at 279 (stating length of time surname used was of little assistance in best-interest analysis).

### Difficulties, Harassment, or Embarrassment

The trial court found that no evidence was presented that the child would suffer from any difficulties, harassment, or embarrassment from bearing the Christensen surname. After carefully reviewing the evidence, we conclude that the trial court was correct. Because there was no evidence presented, it is not a factor in the best-interest analysis and cannot be relied on to support a change of surnames. *See id.*

### Insecurity or Lack of Identity

The trial court again found that no evidence was presented regarding the possibility that a different surname may cause insecurity or lack of identity on the part of the child. The trial court correctly stated, "As no evidence has been presented which indicates the parties' minor child shall suffer any insecurity or lack of identity by retaining the name of 'Christensen,' this is not sufficient grounds to grant [Brubaker's] request." We agree with the trial court and note that without sufficient evidence regarding this factor, the possible effect of a change of surnames on the child would be pure speculation at best. *See In re Omelson,* 68 Ill.Dec. at 313, 445 N.E.2d at 957 (stating because no expert testimony or academic literature was offered regarding effect of surname change on child's psychological well-being, any apprehensions were mere speculations).

### Motives or Interests of Custodial Parent

Lastly, the trial court addressed the motives or interests of the custodial parent. Here, although Brubaker strongly urges that her desire for the name change is solely for the best interest of the child, her motives are suspect. The evidence demonstrates that Brubaker has deliberately interfered with Christensen's relationship with his daughter, so much so that Brubaker has been found in contempt and judicial intervention has been necessary to enforce compliance with the visitation schedule. Brubaker has moved with the child, leaving Christensen with no forwarding address. Brubaker has encouraged the child to use a surname which is not legally hers and has tacitly encouraged the child to distance herself from her biological father. Additionally, Brubaker attempted to legally change the child's surname without notice to Christensen, claiming she had no idea where he was located and that he had not paid child support, a false allegation given that at the same time she was involved in litigation with Christensen in Utah. Accordingly, the trial court's finding that Brubaker's motives and/or interests in changing the child's surname to that of her new husband's "has been motivated by her own interests," as opposed to the minor child's, is not clearly erroneous.

### CONCLUSION

■ We hold that the trial court's findings are not against the clear weight of the evidence, nor are we left with "a definite and firm conviction that a mistake has been made." *Hamby,* 769 P.2d at 279. Therefore, because it is "incumbent upon appellant to go forward with the evidence and show that the name change [is] in the best interest of the child[ ]," *Laks,* 540 P.2d at 1280, and Brubaker has failed to do so, we affirm the trial court's ultimate conclusion that the child should continue to bear the surname Christensen and further affirm its order requiring Brubaker to inform all the necessary school, church, and other officials regarding the child's correct surname.[3]

Because neither party was awarded attorney fees or costs below, we decline to grant them to either party on appeal. *See Burt v.*

**3.** Brubaker claims that the trial court exceeded the scope of the motion before it by requiring Brubaker to notify the requisite officials of the minor child's correct surname. We find this argument to be without merit considering the fact that that part of the trial court's order is necessary to its implementation of the child's surname as Christensen. We also find meritless Brubaker's arguments regarding res judicata and laches and therefore decline to address them. *See Salt Lake Inv. Co. v. Wilford H. Hansen Stone Quarries, Inc.,* 927 P.2d 200, 201 n. 2 (Utah.Ct. App.), *cert. denied,* No. 970065, 937 P.2d 136 (Utah, Apr. 23, 1997).

*Burt,* 799 P.2d 1166, 1171 (Utah.Ct.App. 1990).

BENCH and JACKSON, JJ., concur.