2019 UT App 185

## THE UTAH COURT OF APPEALS

DARIO ARTHUR VELASQUEZ,
Appellant,
*v.*
STACY L. CHAVEZ,
Appellee.

Opinion
No. 20180451-CA
Filed November 15, 2019

Third District Court, Salt Lake Department
The Honorable Matthew Bates
The Honorable Patrick Corum
No. 154901302

Marsha M. Lang, Attorney for Appellant

Michael P. Studebaker, Attorney for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

HAGEN, Judge:

¶1 Dario Arthur Velasquez appeals the district court's decision to hyphenate the surname of his biological son (the child). Velasquez argues that the court did not address the six-factor test articulated in *Hamby v. Jacobson*, 769 P.2d 273 (Utah Ct. App. 1989), for determining whether changing the child's surname from Chavez to Velasquez-Chavez was in the child's best interest. Because we conclude the district court properly considered all the relevant factors and provided sufficient findings to support its decision, we affirm.

BACKGROUND

¶2      Velasquez and Stacy L. Chavez were in a relationship and living together when Chavez became pregnant with their child. A few months into the pregnancy, Chavez ended the relationship and moved in with a former boyfriend who was the father of her daughter.

¶3      When Chavez gave birth to the child, she left the birth certificate blank as to the child's father and gave the child the surname "Chavez." A few weeks after the birth, Velasquez filed a Verified Petition for Decree of Paternity (the petition). Relevant to this appeal, Velasquez petitioned the court to change the child's surname to "Velasquez."

¶4      At the trial on the petition, the parties were present and stipulated to proffers of testimony before the court. Velasquez's attorney argued that the child's surname should be "Velasquez" because Velasquez believes that the child is confused as to who his "real father" is because he calls both Velasquez and Chavez's significant other "daddy." Velasquez's attorney argued that the child will be stigmatized and embarrassed to have his mother's surname because children at school "are very cruel" and will conclude he is "illegitimate." His attorney anticipated that a hyphenated surname might be an option and expressed concerns that the name "Velasquez will be dropped off" if the child's surname was changed to "Chavez-Velasquez." There was also concern that the child would just go by "Chavez" if the last name was changed to "Velasquez-Chavez." But Velasquez did not "have any objection to Chavez being a middle name." Velasquez's attorney argued that "for inheritance purposes, for the idea of carrying on the last name of Velasquez, for the heritage of his family, [the child] should have [Velasquez's] last name." At this point, the district court asked Velasquez directly, "[S]hare with me your heritage, where does your family come from?" Velasquez responded that he and his mother are from

Texas and that his father was born in Mexico but has spent most of his life in Texas.

¶5     In response, Chavez's attorney argued that Velasquez's arguments with respect to the child's confusion, embarrassment, and "stigmas in schools" were based on "a lot of speculation" without any support. Chavez disagreed that the child would suffer embarrassment or lack of identity without his father's surname. Chavez's attorney proffered that the child shared Velasquez's middle name and that Chavez was "not opposed to the offer of the child's last name being Velasquez-dash-Chavez." Chavez's attorney further explained that he had "spent a lot of time researching and trying to find any sociological or psychological literature" to make sure the child was not harmed by a hyphenated surname. The court asked Chavez where her family came from, and she responded that her family was from Colorado and that she lived in Utah. The court commented that "it is common in certain Latin cultures for a person's last name to be the father's last name hyphenated with the mother's last name" and then asked if either family followed that tradition. Velasquez and Chavez each responded, "No."

¶6     Following the proffered testimony, the district court gave its oral ruling, following the six-factor test articulated in *Hamby v. Jacobson*, 769 P.2d 273 (Utah Ct. App. 1989), for determining whether changing the child's surname is in the child's best interest. The court concluded that it was in the child's best interest to have the surname Velasquez-Chavez to "make sure that the child understands that he has two parents that don't live together but they're both his parents." The court also explained that "although this isn't common in the heritage of the two families here, it is . . . very common in the heritage of many Latin and Hispanic families, in Utah and outside of Utah . . . [and] it's very common in . . . other cultures in this community."

¶7     Velasquez objected to the hyphenated last name. He personally addressed the court, arguing that it had erroneously

based its decision on "Latin countries and stuff," despite the fact that he and Chavez were both born in the United States and "the ways here in America is [to use] one last name." The court clarified that it "mentioned that particular cultural tradition only to demonstrate that [it] found little basis to find that a hyphenated name is going to cause the child any embarrassment simply because that is so prevalent in our community today, regardless of where it comes from."

¶8 Following the trial, the court entered findings of fact and conclusions of law and ordered that the child's surname be changed to Velasquez-Chavez. Velasquez now appeals.

ISSUE AND STANDARD OF REVIEW

¶9 Velasquez contends the district court erred in determining that it was in the child's best interest to hyphenate the child's name to Velasquez-Chavez. "We review the trial court's findings under a clearly erroneous standard and will not disturb those findings unless they are against the clear weight of the evidence . . . ." *Hamby v. Jacobson*, 769 P.2d 273, 279 (Utah Ct. App. 1989). But "when the evidence consists only of proffers to the trial court, the appellate court is in as good a position to review the proffer as was the trial court, as no assessment of witness credibility occurred below." *Id.* at 278 (cleaned up). "Therefore, we review the facts and draw our own legal conclusions therefrom," *id.* (cleaned up), and will reverse only if we "reach[] a definite and firm conviction that a mistake has been made," *id.* at 279.

ANALYSIS

¶10 This court has previously held that "the best interests of the child is the paramount consideration in determining whether a child's name should be changed." *Hamby v. Jacobson*, 769 P.2d 273, 277 (Utah Ct. App. 1989). There are six factors that are

relevant for determining the best interests of the child in this regard:

> 1) the child's preference in light of the child's age and experience, 2) the effect of a name change on the development and preservation of the child's relationship with each parent, 3) the length of time a child has used a name, 4) the difficulties, harassment or embarrassment a child may experience from bearing the present or proposed name, 5) the possibility that a different name may cause insecurity and lack of identity, and 6) the motive or interests of the custodial parent.

*Christensen v. Christensen*, 941 P.2d 622, 624 (Utah Ct. App. 1997) (cleaned up).

¶11 Velasquez argues that the district court "did not correctly apply the [*Hamby*] factors in this matter in determining that the [c]hild's name should be hyphenated and not just Velasquez after his father." Velasquez asserts that the court improperly "used its belief that the parties have a culture and heritage from Latin or Central America because of the root of their surnames to support its decision." Essentially, Velasquez argues that there are no facts apparent in the record to support the court's decision to hyphenate the child's surname and appears to challenge four of the *Hamby* factors: "the effect of a name change on the development and preservation of the child's relationship with each parent"; "the difficulties, harassment or embarrassment a child may experience from bearing the present or proposed name"; "the possibility that a different name may cause insecurity and lack of identity"; and "the motive or interests of the custodial parent." *See id.* (cleaned up). We address each factor in turn.

¶12 We first address the district court's findings related to "the effect of a name change on the development and

preservation of the child's relationship with each parent." *Id.* (cleaned up). The district court found that this was the most "important factor" in this case. The court noted that the child lives in "a blended family where the child has a mother and a stepfather that the child lives with," that "the child has a half sibling" with the last name of the stepfather, and that the child has visitation with Velasquez "outside of the home." The court explained that, under such circumstances, "the child's last name becomes somewhat important in helping the child to identify [with] his heritage, who his parents are[,] and to understand the difference between stepfather and natural father." Thus, the court determined that this factor weighed in favor of "making sure . . . the child does have a last name that helps the child identify with [Velasquez]." Based on these findings, we see no error in the court's determination that a blended family supports a hyphenated surname, and Velasquez has not persuaded us otherwise.[1]

¶13 Next, we address whether the hyphenated surname will result in "difficulties, harassment or embarrassment" to the child. *Id.* (cleaned up). Velasquez argues that the child could suffer "possible harassment by not being considered an

---

1. On appeal, Velasquez makes much of the fact that he is "the only male heir in his family" and that the child, as his only issue, "will be the only one who can carry on the surname Velasquez." Thirty years ago, this court firmly rejected relying on the outdated notion "that a father has a protectible or primary interest in having his children bear his surname." *Hamby v. Jacobson*, 769 P.2d 273, 276 (Utah Ct. App. 1989). As this court recognized, "a paternal preference for a child's surname is improper, just as would be a preference for the maternal surname." *Id.* at 277. We fail to see how Velasquez's own interest in having the child carry on his family name bears on the child's best interest, which is the "paramount consideration in determining whether a child's name should be changed." *Id.*

American by bearing a hyphenated name in the manner of a heritage and ethnicity that neither side of his family affiliates or associates themselves with."[2] In response to the court's questions, Chavez and Velasquez made clear that they do not identify with Latin culture, and the court recognized that there are many "blended families" and children "from various backgrounds," including those "who are of European ancestry," with hyphenated names, "regardless of where [the practice of hyphenated names] comes from." Velasquez does not challenge this finding, only arguing that the court improperly based its decision on its "belief that the parties have a culture and heritage from Latin or Central America." But the court took care to clarify that it "mentioned [the Latin or Hispanic] cultural tradition only to demonstrate that [it] found little basis to find that a hyphenated name is going to cause the child any embarrassment simply because [such a practice] is so prevalent in our community today, regardless of where it comes from." We cannot say that the court's determination was against the clear weight of the evidence, nor can we say that we are left with a firm and definite conviction that the court erred in weighing this factor.

¶14   With respect to "insecurity or lack of identity," *Christensen*, 941 P.2d at 624, 626, the court again expressed the "need to make sure that the child properly identifies with both

---

2. Velasquez insinuates that the prospect of a hyphenated surname was generated by the court's own misguided assumptions about the parties' ethnicities and cultural backgrounds. But it was the parties themselves who identified a hyphenated surname as an option. Velasquez's attorney was the first to broach the possibility of a hyphenated name in proffering that Velasquez worried that the child might drop Velasquez and use only Chavez if his surname was hyphenated. And Chavez's attorney proffered that Chavez was "not opposed to the offer of the child's last name being Velasquez-dash-Chavez."

parents and particularly, that he understands that [Velasquez] is . . . his father." Velasquez does not directly challenge this finding, and instead argues that with a hyphenated name the child "will likewise face many throughout his life who think he is not a third-generation American but rather a Latin American, which raises the possibility that it may cause insecurity and lack of identity." Velasquez did not provide any support for this assertion below or on appeal and relies on mere speculation. We therefore find no error in the court's findings with respect to this factor.

¶15    Finally, Velasquez argues that the court "overlooked" the "exhibits and evidence indicating [Chavez's] ulterior motives." In support of his argument, Velasquez points to Chavez's answer to his petition. But like the district court, we discern nothing in Chavez's answer that suggests an ulterior motive. Velasquez also complains that, in proceeding by proffer, the court deprived him of the opportunity to present evidence relating to Chavez's motive. But both parties agreed at the outset to proceed by proffer. Nevertheless, after the court made its ruling, Velasquez claimed that the record was insufficient for purposes of appeal and asked for an evidentiary hearing. The court denied the request, noting that it had "accepted the facts [he] offered almost verbatim" and took issue only with "[his] suggestion that there was maybe some ill motive on Ms. Chavez's part." In fact, Velasquez never proffered any facts relating to Chavez's motives. Instead, his attorney merely speculated that "[t]here seems to be some motive here that I don't know" and hoped to find one by asking Chavez "on the stand . . . why in the world she wouldn't want [the child] to have the last name Velasquez." The district court acted well within its discretion in denying an evidentiary hearing to conduct such a fishing expedition. Because Velasquez proffered no facts to support his claim of an ulterior motive, the court properly concluded that this factor did not bear on the best interest of the child.

¶16    In light of the district court's findings with respect to the four factors Velasquez challenges on appeal, we conclude the district court did not err in determining that it was in the child's best interest to change his surname from Chavez to Velasquez-Chavez.

CONCLUSION

¶17    The district court's determination that it was in the child's best interest to change his surname to Velasquez-Chavez was not against the clear weight of the evidence and does not leave us with a firm and definite conviction that a mistake was made. Accordingly, we affirm.

———————