868 P.2d 1005

**In re the Matter of Vincent B. PIZZICONI, Petitioner– Appellant,**

v.

**Bonnie C. YARBROUGH, Respondent–Appellee.**

**No. 1 CA–CV 91–0249.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 23, 1993.

Review Denied March 15, 1994.

Fox & Fox, P.C. by John R. Fox, Phoenix, for petitioner-appellant.

Helm & Kyle, Ltd. by Margaret R. Tinsley, Tempe, for respondent-appellee.

## OPINION

KLEINSCHMIDT, Judge.

This appeal from rulings in a paternity case raises an issue concerning a child's surname as well as other questions relating to support for the child and the admissibility of evidence. The case arose as follows.

Vincent Pizziconi and Bonnie Yarbrough, to whom we will frequently refer to hereafter as the "Father" and the "Mother," respectively, are the natural parents of a child who was born in 1986. They have never married. The Father initially filed a paternity action when he learned that the Mother's current husband was interested in adopting the Child. This was consolidated with a paternity suit, which the Mother filed requesting that Pizziconi be declared the father of the Child and that he pay for the expenses associated with the birth of the Child and pay back child support.

Following a trial, the judge denied the Father's request that the Child bear his surname and ruled that the Child's surname should be "Yarbrough," which was the name of the Mother's former husband and the name used by the Mother and the Child's half brother. The judge also ordered Father to pay back child support in the amount of $6,959.00, monthly child support of $307.00, and the Mother's attorney's fees.

### THE CHILD'S SURNAME

■ The Father argues that he and the Child have a protectable interest in having the Child bear the paternal surname and that the Child should use that name unless the Mother can prove that it would be harmful to the Child to do so. He relies primarily on the case of *Laks v. Laks*, 25 Ariz.App. 58, 540 P.2d 1277 (1975), in which a mother, following her divorce, changed the surnames of her three children to a hyphenated version of the father's name and her own surname which she had used from birth. The mother argued that under the Equal Protection Clause of the Fourteenth Amendment she had a right equal with the father's to give her children her own name unless the father could show that such change was not in the best interests of the children. Division Two of this court affirmed an order reinstating the paternal surname, noting that although a father does not have a legal right to have his child bear his surname, the "usual custom" gives him a protectable interest in such. The court observed that the bond between a child and its noncustodial father could be weakened or destroyed if the child's name were changed.

Although the court in *Laks* acknowledged the mother's argument that the father's position was based upon a premise that the sexes are not equal, it said that where the issue was a name *change*, and not what the children were *originally named*, the best interests of the children were controlling. Since the mother had not filed a transcript of the hearing, the court presumed the record sustained the judgment with respect to the children's best interests.

In this case, unlike in *Laks*, the Child has never borne her Father's name. According to the Mother's undisputed testimony, when she told the Father of the Child's birth, he initially said that he did not want to be involved. Accordingly, the Mother could not have given the Child the Father's name because under Ariz.Rev.Stat.Ann. ("A.R.S.") section 36–322(F), an unmarried women who gives birth to a child may not use the putative father's name on the birth certificate without his consent. *See also* A.R.S. § 36–338(D) (name on birth certificate may be changed to father's surname if both parents acknowledge father's paternity and request substitution of his name).

The court in *Laks* held that the father's protectable interest was based on the custom of giving legitimate children their father's surname. With respect to children born out of wedlock, however, the custom has been for the child to assume the mother's surname. *See* Richard H. Thornton, Note, *The Controversy over Children's Surnames: Familial Autonomy, Equal Protection and the Child's Best Interests*, 1979 No. 2 Utah L.Rev. 303, 312. This custom undercuts the Father's position. So too, the concern *Laks* expressed about weakening the link between a father and child by discontinuing the use of the father's name has little weight in this case because the evidence shows that the Father and Child have bonded.

Finally, although the court in *Laks* recognized the father's interest in having his children bear his name, it held that the best interests of the children was controlling. *See* Note, *Whose Interest is Controlling in the Name Change of Minors—the Father's, the Mother's or the Child's?*, 18 Ariz.L.Rev. 725, 730–31 (1976). This rule, that the child's best interests control, is consistent with the law in a number of jurisdictions. *See Hamby v. Jacobson*, 769 P.2d 273, 277 (Utah Ct.App. 1989) (citing *Laks* as among the decisions that follow the rule that a name change should be granted only if the court finds the change is in the best interests of the child); *Hamman v. County Court in and for Jefferson County*, 753 P.2d 743, 749 (Colo.1988); *Ribeiro v. Monahan*, 524 A.2d 586, 587 (R.I. 1987); *Daves v. Nastos*, 105 Wash.2d 24, 711 P.2d 314, 318 (1985); *In re Schiffman*, 28 Cal.3d 640, 169 Cal.Rptr. 918, 922, 620 P.2d 579, 583 (1980).

The *Laks* court did not set forth any guidelines for deciding when a change of name will be in a child's best interests, but other courts have considered such factors as: the child's preference; the effect of the change on the preservation and development of the child's relationship with each parent; the length of time the child has borne a given name; the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed name; the motive of the parents and the possibility that the use of a different name will cause inse-

curity or a lack of identity. *See Hamby*, 769 P.2d at 277; *In re Schiffman*, 169 Cal.Rptr. at 922, 620 P.2d at 583.

We agree that all these factors may be relevant. Furthermore, courts should not give greater weight to the father's interest in having the child bear the paternal surname because, as the Supreme Court of Utah recognized in *Hamby*, "our society no longer adheres to the notion that the husband is the sole legal representative of the family, and its property and children, and therefore able to unilaterally determine the surname of the couple's children." 769 P.2d at 276 (citation omitted). It went on to say: "In these times of parental equality, arguing that the child of unmarried parents should bear the paternal surname based on custom is another way of arguing that it is permissible to discriminate because the discrimination has endured for many years." 769 P.2d at 278 (citation and footnote omitted).

A standard which gives greater weight to the paternal surname could implicate equal protection concerns. *See* Note, *Whose Interest is Controlling in the Name Change of Minors—the Father's, the Mother's or the Child's?*, 18 Ariz.L.Rev. at 731–36; *see also Roe v. Conn*, 417 F.Supp. 769, 782–83 (M.D.Ala.1976) (statute giving father the right to determine surname of child following legitimation without due regard to mother's desire or child's individual interest violates equal protection guarantees). Such a standard is also inappropriate since the tradition of children bearing the father's name has eroded as women have, with increasing frequency, opted to retain their birth names after marriage or to select a surname other than their husband's. *Hamby*, 769 P.2d at 276.

Notwithstanding that the parties originally left this matter to the discretion of the trial judge, informed by the law which they argued, the Father now urges that we should remand this issue to the trial court to consider specific factors bearing on whether the Child's name should be changed. Some courts have required an express finding as to whether the best interests of the child require the grant or denial of a request for a change of name. *See Daves*, 711 P.2d at 318;

*Hamby,* 769 P.2d at 278. There is, however, no Arizona statute or case that requires such an express finding on this issue, and the Father did not request findings of fact pursuant to Rule 52(a), Arizona Rules of Civil Procedure. We therefore assume that the trial court found every controverted issue of fact necessary to sustain its decision and the judgment will be upheld if there is reasonable evidence to support it. *Fleming v. Becker,* 14 Ariz.App. 347, 350, 483 P.2d 579, 582 (1971).

There is sufficient evidence to support the inferential finding that a change of name was not in the Child's best interest. The Child had used the name "Yarbrough" for four years, her half-brother uses that name, and the Mother avowed that she would not seek to change the name in the future. *See Ribeiro,* 524 A.2d at 587 (best interest of illegitimate three-year-old child to retain mother's surname when that name was on birth certificate, child had grown up with the name, and siblings used that name).

## THE AWARD OF PAST CHILD SUPPORT

■ The Father argues that there was insufficient evidence to support the award of past child support. He asserts that the trial judge improperly used the Arizona Child Support Guidelines adopted by the Arizona Supreme Court in computing the amount due. He argues that the award should be reversed or, in the alternative, that the case should be remanded for a determination of the amount the Mother actually spent on behalf of the Child from birth until the entry of the *pendente lite* support order which the court entered after the paternity actions were filed.

Except for evidence of amounts spent for the expenses of birth, health insurance premiums, and other costs of health care, the Mother never testified in detail regarding what she had spent on the Child. She did testify that she had borne all the expenses dating from the birth of the Child until the *pendente lite* order was entered and that the Child had lived with her continuously except for occasional visits with the Father. The affidavits detailing income and expenses for

the years 1986, 1987, and 1988, together with tax returns for those years, were also admitted in evidence.

The amounts awarded as back child support for the years 1986 through 1988 match the amounts calculated as the Father's obligation under the Guidelines, although the amount for 1986 also includes some costs for medical insurance. The trial judge did give the Father credit for over $10,000 which he testified he had paid for the Child's support over those years. The Father argues that it is implicit in A.R.S. section 12–849(A), the statute which sets forth the factors the court is to consider in setting the amount of child support, that amounts spent for past care be documented. He also argues that under the holding of *Ortiz v. Rappeport,* 169 Ariz. 449, 820 P.2d 313 (App.1991), it was improper to calculate the award for back support on the basis of the Guidelines. *Ortiz* held that it was not error to calculate past child support based on evidence of what was actually expended on behalf of the child as opposed to a larger amount that would have been awardable under the Guidelines. *Id.* at 452, 820 P.2d at 316.

In our opinion, the trial judge did not err in the way he determined past child support. We do not read *Ortiz* to hold that the only way of arriving at back child support is to document what was actually spent on the child's behalf. It would be unreasonable to promulgate the strict rule for which the Father contends. The Guidelines are an estimate of the cost of providing for a child which take into account the financial circumstances of the parents. Here, the trial judge had information about the Parents' income and expenses. Although the Father had the right to prove that the Mother's past expenses on behalf of the Child were less than those indicated by the Guidelines work sheets, he did not attempt to do so.

■ The Father also argues that laches and/or equitable estoppel preclude any award of past child support. He asserts that the Mother never applied for such an award until he filed his paternity action and that the request for support in her own petition is not broad enough to call for an award of back

child support. He also asserts that it is unfair to award support for the Child during the period of time the Mother was denying that he was the father.

■ A natural father is legally obligated to support his child. A.R.S. § 12–2451(A); *Barrett v. Barrett,* 44 Ariz. 509, 514, 39 P.2d 621, 622 (1934). An action for support can be brought at any time during a child's minority. *Anonymous Wife v. Anonymous Husband,* 153 Ariz. 573, 577, 739 P.2d 794, 798 (1987). Thus, neither laches nor estoppel will bar a claim for child support if the parent against whom the claim is asserted cannot demonstrate prejudice. *See Anonymous Wife,* 153 Ariz. at 577, 739 P.2d at 798; *Ray v. Mangum,* 163 Ariz. 329, 333, 788 P.2d 62, 66 (1989).

It is undisputed that the Mother originally told the Father that the Child was his. The Mother denied that she later told the Father differently, and the Mother testified that she filed her claim for child support as soon as she was financially able to do so. The Father conceded that many of the expenses of child care which he assumed voluntarily, and for which the trial judge gave him credit in the award, were paid during the period when he says the Mother was denying his paternity. The issue was fairly tried on its merits, and the trial judge did not abuse his discretion in inferring that the Father had not suffered sufficient prejudice from the delay to bring laches and/or estoppel into play.

### STRIKING TRANSCRIPT OF TELEPHONE CALL

■ The Father's final issue concerns a transcript of a telephone conversation between himself and the Mother, which he recorded. The problem arose as follows.

At trial, the Mother denied that she had ever told Pizziconi that he was not the father of the Child. On cross-examination, she conceded, in the context of discussing what to tell the Child in the event Pizziconi did not want to become involved, that she might have said that the Child could be told that someone in Texas was her father. On closer questioning by the judge, the Mother also conceded that on one occasion she had told

Pizziconi that he was not the father. Counsel for the Father then began reading from a transcript of a telephone conversation between the Mother and the Father. Counsel for the Mother objected on the grounds that the transcript had not been timely provided in accordance with the rules and had not been included in the Father's impeachment packet.

After counsel for the Father agreed to give a copy of the transcript to opposing counsel, the court allowed the transcript to be read into evidence. It revealed that the Mother had told Pizziconi he was not the Child's father and that she wanted the Father out of their lives. In explanation, the Mother repeated that she had said this to the Father in the context of allowing the Father to disengage himself and in discussing how such could be explained to the Child.

After the trial and in response to a motion objecting to the admission of the transcript, the court struck the transcript from evidence because the Father had not disclosed it prior to trial as required by Rule V of the Uniform Rules of Practice for the Superior Court and Local Rule 6.5(b)(10), Local Rules of Maricopa County Superior Court, and because he had not provided the full tapes of the conversation to counsel for the Mother as he had been ordered to do during trial.

■ The Father argues that Local Rule 6.5(b)(10) does not apply because no pretrial statement was filed and that Rule V does not address evidence which is used only in connection with cross-examination. In this latter contention, he is wrong. Rule V does not distinguish between evidence used in cross-examination settings compared to other settings. We need not embroil ourselves in technicalities and a minute examination of who did what and when with respect to the transcript. The Father's argument that the transcript was crucial because it bore on the credibility of the parties is a weak one. The trial judge obviously took pains to sift and evaluate the evidence, by no means accepting the Mother's version on every point. Nothing in the transcript has much relevance to the Child's best interests with respect to her surname. As to back child support, there was other evidence to prove that the defen-

dant had been told that the Child was not his, and most important, the Father acknowledged that, notwithstanding having been told that the Child was not his, he continued to pay the Child's expenses on the basis of what he thought was reasonable. The trial judge was within his discretion in excluding the transcript, even if he erred in excluding the transcript, such would not justify a reversal. *See Rimondi v. Briggs,* 124 Ariz. 561, 565, 606 P.2d 412, 416 (1980) (absent prejudice, rulings on the admission or exclusion of evidence will not be reversed).

The orders of the trial court are affirmed.

CONTRERAS and JACOBSON, JJ., concur.