Kevin Dean MATTHEWS *v.* Taja Lee SMITH

CA 02-460                                    97 S.W.3d 418

Court of Appeals of Arkansas
Division III
Opinion delivered January 29, 2003

*Dana Dean Watson*, for appellant.

*Nancy L. Mathis*, for appellee.

TERRY CRABTREE, Judge. In this paternity case, the biological father appeals the denial of his request for his child to bear his surname. For reversal, appellant contends that the trial court erred by failing to consider the factors set out in *Huffman v. Fisher* (*Huffman I*), 337 Ark. 58, 987 S.W.2d 269 (1999), and he argues that the trial court's decision is otherwise clearly against the preponderance of the evidence. We reverse on the second point.

Appellant Kevin Dean Matthews and appellee Taja Lee Smith had a child out of wedlock born on December 20, 2000. The parties were engaged to be married when their son was conceived, but they did not marry. DNA test results completed in April 2001 revealed that appellant was the father of the child. On May 9, 2001, appellant filed a petition to establish paternity in which he

requested that the child carry his surname. At the hearing held on November 8, 2001, the parties agreed by stipulation that appellant was the child's father and that appellee was to retain custody of the child. The parties also agreed on a visitation schedule and the amount of child support appellant was to pay. The only issue litigated was whether the child's surname should be changed from "Smith," the name appellee acquired from a former marriage, to "Matthews," appellant's surname. The trial court ruled in favor of appellee, leaving the child with the name of Smith.

The law on this issue is settled. The best interest of the child is the dispositive consideration in determining whether a child's surname should be changed. *Carter v. Reddell*, 75 Ark. App. 8, 52 S.W.3d 506 (2001). In determining the best interest of the child, the trial court is required to consider the following six factors set out in *Huffman I, supra*:

(1) the child's preference;

(2) the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent;

(3) the length of time the child has borne a given name;

(4) the degree of community respect associated with the present and proposed surnames;

(5) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and

(6) the existence of any parental misconduct or neglect.

*Huffman I* at 68, 987 S.W.2d at 274. The burden of proof is on the moving party to demonstrate that the name change is in the best interest of the child. *Huffman v. Fisher, (Huffman II)*, 343 Ark. 727, 38 S.W.3d 327 (2001). Where a full inquiry is made by the trial court with regard to the guiding factors and a determination is made with due regard to the best interest of the child, the trial court's decision will be upheld where it is not clearly erroneous. *Carter v. Reddell, supra.* A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court, on the entire evidence, is left with a definite and firm con-

viction that a mistake has been made. *Bell v. Wardell*, 72 Ark. App. 94, 34 S.W.3d 745 (2000).

■ Appellant first argues that the trial court failed to apply the factors set out in *Huffman I, supra.* We find no merit in this argument. In its ruling, the trial court acknowledged that the primary consideration was the best interest of the child and that appellant bore the burden of proof. The court referred to the child's young age, eleven months, and discussed the parties' testimony, which focused almost entirely on their respective views as to the confusion the child might experience if his name were changed or remained the same. The trial court could only weigh the factors for which the parties provided evidence or that were relevant under the circumstances. *Huffman II, supra.* We cannot say that the trial court failed to consider the appropriate factors.

Appellant further argues that the trial court's decision declining to change the child's name is clearly erroneous. The parties were the only two witnesses at the hearing. In their testimony, it was disclosed that appellee had a four-year-old son born of her first marriage who carried the name "Smith," and that appellee was engaged to Josh Wilson and that she anticipated taking his name when they married. Appellant also has another child, a son, who goes by the name of Matthews.

In his testimony, appellant said that, although he and appellee had stopped seeing each other before the child was born, he maintained contact with appellee on a regular basis during the pregnancy and provided financial support to her. He said that he accompanied her to the first doctor's visit but was not allowed to attend any more appointments. Appellant testified that appellee had hinted that her former husband, Charles Smith, might be the father of the child. He said that they agreed, however, that paternity testing would be done after the child was born. Although his work often required him to be out of town, he was at the hospital when the child was born. He said that appellee had allowed him to visit the child an hour at a time when he was home. Appellant further testified that he wanted his son to carry his name and that he felt it would strengthen the bond between them. Appellant thought it would be confusing for the child not to have his name

because the child would know him as his father. He also thought it would be confusing for the child to go by "Smith" since appellee's ex-husband was not the child's father. He also felt that the child would think it unusual if he did not have his own father's name, while his half-brothers carried their fathers' names. Appellant believed that it would be more clear to his son and appellee's son if both boys had their own fathers' names. Appellant also testified that he had family members who lived in the community and that his brothers and half-brother were Matthews.

Appellee testified that she objected to changing the child's name because it would be confusing for her sons to be raised with different last names. She felt it would be better, particularly when they entered school or played sports, if their names were the same. She believed that, if their names were different, they would be put in the position of having to explain why this was so.

■ Name-change decisions are to be made on a case-by-case basis. *Huffman II, supra.* After reviewing this record, we are convinced that a mistake has been made and that it is in the child's best interest for his name to be changed. As demonstrated by his actions, appellant has taken responsibility for his son and has shown his concern for the child's well being and his intention to be involved in the child's life. The only objection appellee had to changing the child's name was her belief that it would be confusing for her sons to have different last names. However, under the circumstances, both boys will grow up knowing that they have different fathers, so we cannot see that their having different surnames will be confusing to them. We think that it would create added confusion for the child to have the name of Smith as it would lead others to believe that Smith was his father. With this child knowing appellant to be his father, we believe that it would be best for the child to carry appellant's name and not the name of a man to whom he bears no relation. Therefore, we reverse and remand for the entry of an order to change the child's name.

Reversed and remanded.

PITTMAN and ROBBINS, JJ., agree.