752 N.W.2d 564 (2008)
276 Neb. 114
In re Change of Name of SLINGSBY.
Hunter Wade Slingsby, a minor, by and through his mother and next friend, Jessie M. Watts, appellant,
v.
Devin W. Oxford, Intervenor-Appellee.
No. S-06-817.
Supreme Court of Nebraska.
July 18, 2008.
*565 Marc J. Odgaard, Amy L. Parker, and Larry W. Beucke, of Parker, Grossart, Bahensky, Beucke & Odgaard, L.L.P., Kearney, for appellant.
Jay A. Ferguson, Omaha, for intervenor-appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
Jessie M. Watts, mother of Hunter Wade Slingsby, filed a petition seeking to change Slingsby's surname from Slingsby, Watts' maiden name, to her married name, Watts. Slingsby's biological father, Devin W. Oxford, intervened in the action and *566 filed an objection to the name change. The district court found that Watts failed to meet her burden of proof and denied the requested name change. We affirm.

BACKGROUND
Slingsby was born out of wedlock on November 10, 2000, to Watts and Oxford. Oxford acknowledged paternity of Slingsby, but was not listed on Slingsby's birth certificate. Oxford testified that at the time of Slingsby's birth, he agreed that Slingsby's surname would be Slingsby. In September 2002, Watts, Oxford, and the State of Nebraska entered into a stipulation regarding paternity, custody, support, and daycare expenses. Watts was given custody of Slingsby subject to Oxford's right to reasonable visitation. Oxford was ordered to pay child support, one-half of uninsured medical costs, and one-half of daycare expenses.
In July 2003, Watts and Slingsby moved from Kearney, Nebraska, to Omaha, Nebraska. In July 2004, Watts got married. At that time, her new spouse was attending pharmacy school at the University of Nebraska Medical Center in Omaha. Watts testified that she and her new spouse planned to move back to Kearney in June 2006.
In October 2005, Watts filed a petition seeking to change Slingsby's surname from Slingsby to Watts. Oxford filed an objection to the name change. Trial on the matter was held in March and May 2006.
With regard to the name change, Watts testified she wanted to change Slingsby's surname to Watts because she and her new spouse were planning on having children and she did not want Slingsby to feel as though he was not part of the family. She also wants Slingsby to be closer to her new husband. Watts further testified that she did not want Slingsby to suffer embarrassment at school because his current surname is not the same as either of his biological parents' surnames. In addition, Watts testified that Slingsby had begun to tell his preschool teachers that his name was Watts and had been using the name Watts at school.
Oxford testified that he is concerned that Watts and her family are trying to substitute Watts' new spouse for him as Slingsby's father. Oxford testified that Watts had asked that Oxford relinquish his rights to Slingsby for adoption purposes, which he refused to do. Oxford further testified that he was concerned about the name change because Slingsby is his son and he is trying to have a relationship with Slingsby. Oxford acknowledged, however, that he may have visitation with Slingsby despite a name change.
Testimony was also received at trial from Dr. Thomas Haley, a clinical psychologist. Haley testified that 2 days prior to trial, he met with Watts for approximately 1 hour, but did not meet with Slingsby regarding this matter. Based upon information provided to him during his meeting with Watts and what he heard in court, Haley opined that in light of the pattern of Slingsby's life thus far and Slingsby's relationship with his parents, changing Slingsby's surname to Watts would be in Slingsby's best interests. With regard to Slingsby's relationship with Watts, Haley testified that not allowing the change in surname would likely introduce a pattern of alienation on Slingsby's part. On cross-examination, however, Haley testified that this alienation was a possibility and that he could not state whether a refusal on the court's part to change Slingsby's surname to Watts would have a positive or negative effect on Slingsby as he grows up. Haley further testified that in the 1 ½ years that Watts had been married to her new husband, Slingsby had suffered no ill effects from having the surname Slingsby, that *567 Haley was aware of. With regard to Slingsby's relationship with Oxford, Haley testified that changing Slingsby's surname from Slingsby to Watts would be a "non-event." Haley also testified that changing Slingsby's surname to Watts would not necessarily result in Slingsby's more closely identifying Watts' new husband as his father rather than Oxford.
In June 2006, the district court entered an order denying Watts' petition to change Slingsby's surname. The court noted that the burden is to prove that the name change is in the child's best interests, not the parents', and determined that Watts had failed to meet that burden. The court noted that the factors to be considered in determining whether a change in name is in the child's best interests include whether there has been any misconduct by the parent toward the child. The court found that in this case, there is neither evidence of such misconduct nor evidence of Oxford's failure to maintain contact with Slingsby to any serious degree. The court also noted that Haley could not opine with reasonable certainty that changing Slingsby's surname would have any positive or negative effect. Watts now appeals.

ASSIGNMENTS OF ERROR
Watts asserts that the district court erred in failing to find that she met her burden of proof and in failing to grant her request to change Slingsby's surname from Slingsby to Watts.

STANDARD OF REVIEW
[1] An appellate court reviews a trial court's decision concerning a requested change in the surname of a minor de novo on the record and reaches a conclusion independent of the findings of the trial court. Provided, however, that where credible evidence is in conflict on a material issue of fact, the appellate court considers and gives weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[1]

ANALYSIS
[2-4] The sole issue in this appeal is whether the district court erred in denying the petition to change Slingsby's surname. The question of whether the name of a minor child should be changed is determined by what is in the best interests of the child.[2] The party seeking the change in surname has the burden of proving that the change in surname is in the child's best interests.[3] We have noted that cases considering this question have granted a change of name only when the substantial welfare of the child requires the name to be changed.[4]
[5] In In re Change of Name of Andrews,[5] we set forth a list of nonexclusive factors upon which the question of whether a change of a minor's surname is in the best interests of the child may depend. These factors are (1) misconduct by one of the child's parents; (2) a parent's failure to support the child; (3) parental failure to maintain contact with the child; (4) the length of time that a surname has been used for or by the child; (5) whether the child's surname is different from the surname of the child's custodial parent; (6) a child's reasonable preference for one of the surnames; (7) the effect of the change *568 of the child's surname on the preservation and development of the child's relationship with each parent; (8) the degree of community respect associated with the child's present surname and the proposed surname; (9) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and (10) the identification of the child as a part of a family unit.[6]
In In re Change of Name of Andrews and other cases before this court and the Nebraska Court of Appeals, these factors have been applied in determining whether a name change is in a minor's best interests in situations where the minor's surname is the same as one of his or her parents'.[7] The present case, however, presents a situation factually distinct from prior cases. Here, Slingsby's surname is different from both his parents' surnames. This difference is of paramount importance in this case.
Watts testified at trial that she wanted to change Slingsby's surname because she was concerned about Slingsby's potential embarrassment at having a surname different from Watts' and Oxford's, because she desired Slingsby to feel closer to her new husband, because she wanted Slingsby to feel as though he was part of her and her husband's family, and because Slingsby had begun telling his teachers at preschool that his surname is Watts.
We have recognized that factors in allowing or denying a proposed name change include the difficulty, harassment, or embarrassment that a child may experience from bearing the present or proposed surname, and a child's identification as part of a family unit is a factor to be considered.[8]
[6] The evidence presented at trial, however, does not support Watts' concerns. Aside from Watts' and Oxford's testimony, the only evidence presented at trial regarding Watts' concerns was the testimony of Haley. Haley testified, however, that he was unaware of any ill effects suffered by Slingsby by having a surname different from either of his parents'. As for Slingsby's identification with a family unit, there was no evidence presented that Slingsby would be more or less likely to identify himself with a family unit with or without a change in his surname. Another factor which we have identified as relevant to a court's determination regarding a change in name is the child's preference.[9] The only evidence presented at trial regarding Slingsby's preference was Watts' unsubstantiated testimony that Slingsby has been using the name Watts in preschool and telling his teachers that his surname is Watts. Watts' testimony does not, in and of itself, indicate Slingsby's preference. As for Watts' desire that Slingsby feel closer to her new husband, we do not believe that this is a relevant factor to be considered.
In her brief on appeal, Watts discusses each of the remaining factors set forth in In re Change of Name of Andrews.[10] She contends in her brief that each of those factors supports a finding that a change in surname is in Slingsby's best interests. We disagree. Upon our review of the record in this case, we conclude that the evidence presented at trial does not support a finding that it is in Slingsby's best *569 interests to change his surname to Watts. We, therefore, conclude that the district court did not err by denying Watts' petition for a change in Slingsby's surname.

CONCLUSION
For the reasons discussed above, we affirm the decision of the district court.
AFFIRMED.
GERRARD, J., dissenting.
I respectfully dissent. In my opinion, based on the evidence presented at trial, Watts has proved that it would be in the minor child's best interests to have his name changed from Slingsby to Watts.
I agree that the principles set forth in In re Change of Name of Andrews[1] govern our disposition of this appeal. And the majority correctly notes that this case involves the unique circumstance where the minor child's surname is different from both of his biological parents'. The majority explains that "[t]his difference is of paramount importance in this case." Yet, despite this difference, the majority concludes that Slingsby's name should remain unchangedthus leaving Slingsby with a surname that is different from not only one, but both, of his natural parents'.
A child with a surname that is different from both parents' surnames is a significant factor that must he considered when determining whether a name change is appropriate. For example, in R.W.B. v. T.W. ex rel. K.A.W.,[2] the father of a minor child sought to have the minor child's surname changed from the natural mother's maiden name to the father's surname. At the time of trial, the mother had remarried, and as a result, the minor child's surname was neither the mother's nor the father's. The trial court denied the father's request. The Missouri Court of Appeals reversed that decision, noting that "in denying [the] Father's request to change [the child's] surname to that of [the] Father, the trial court has countenanced a situation in which [the child] now bears neither his mother's new surname nor the surname of his father."[3] The court further explained that it "fail[ed] to see how the best interest of this child is served by setting him apart from other children in the community who may carry either their father's or mother's surname."[4] I agree, as have several other courts to have considered comparable circumstances.[5] Indeed, where the child bears neither the mother's new surname nor the biological father's surname, the child will likely be questioned in the future as to why he does not carry the last name of either his mother or his father.
Furthermore, nothing in the record before us indicates that the proposed name change would in any way be harmful to Slingsby. In essence, the only argument presented by Oxford as to why he opposes the requested name change is that he is worried his relationship with Slingsby will somehow be affected. Specifically, when asked what his concerns were, Oxford testified, "He's my son. I am the father, it's been proven." Oxford further testified, "I'd like my right of visitation" and "I'm *570 trying to have a relationship with my son." Later, Oxford explained that he was worried that Watts was trying to substitute her new husband for Oxford as Slingsby's father.
However, the record does not support Oxford's contention that his relationship with Slingsby will somehow be affected if a name change were to occur. I first note that the appropriate consideration here is what is in the minor child's best interestsnot Oxford's. But, while maintaining Slingsby's relationship with Oxford is in Slingsby's best interests, there is a complete lack of evidence to support Oxford's argument that a name change would harm this relationship. Rather, the evidence indicates that both Oxford's rights to visitation and his relationship with Slingsby would not be harmed. Obviously, a court's determination of Oxford's visitation rights would not be affected by the child's surname. And Dr. Thomas Haley testified that, as to the effect the change would have on Slingsby's relationship with Oxford, it would be "neutral" or a "non-event." Haley further testified that a name change would not "drive a wedge" between Slingsby and Oxford or "alienate" Slingsby from Oxford.
Watts testified that she is not seeking to change Slingsby's name in an attempt to distance Slingsby from Oxford and that it has nothing to do with Oxford's relationship with Slingsby. Watts agreed that Slingsby and Oxford should maintain a relationship with each other. Furthermore, Oxford and the minor child, Slingsby, have never shared the same surname, and there is no evidence in the record to indicate that this difference has had an adverse impact on their relationship to this point. Nor is there evidence in the record to suggest that Oxford cannot maintain a positive relationship with his son without the benefit of the name Slingsby, a name that was never associated with Oxford in the first place. Accordingly, Oxford's concerns relating to the impact a name change would have on his relationship with Slingsby are not supported by the record.
Finally, the evidence indicates that changing Slingsby's name to Watts would help Slingsby identify as a part of a family unit, including potential siblings. In this regard, Watts testified that she and her husband are planning on having children, and Watts does not want Slingsby to feel that he is not part of the family because his surname is different from his siblings'. There is no question that sharing the same surname within a family unit provides security, stability, and a feeling of identity and limits the potential difficulties, confusion, and embarrassment that may arise relating to the paternity of the child.[6] On this note, Haley opined that if Slingsby's name is not changed, it is likely that "a pattern of alienation" might be introduced and "depression or anxiety or forms of acting-out behavior" may result in the future. Haley testified, to a reasonable degree of professional certainty, that he believed changing Slingsby's name to Watts was in Slingsby's best interests.
On the record before us, the evidence establishes that the requested name change is in Slingsby's best interests. Watts presented competent evidence relevant to the factors set forth in In re Change of Name of Andrews,[7] and Oxford presented no evidence to substantiate his claims to the contrary. I would reverse *571 the judgment and remand the cause with directions to grant Watts' petition.
MILLER-LERMAN, J., joins in this dissent.
NOTES
[1] See In re Change of Name of Andrews, 235 Neb. 170, 454 N.W.2d 488 (1990).
[2] See id.
[3] See Lancaster v. Brenneis, 227 Neb. 371, 417 N.W.2d 767 (1988).
[4] See Spatz v. Spatz, 199 Neb. 332, 258 N.W.2d 814 (1977).
[5] In re Change of Name of Andrews, supra note 1.
[6] See id.
[7] See, e.g., In re Change of Name of Davenport, 263 Neb. 614, 641 N.W.2d 379 (2002); In re Change of Name of Andrews, supra note 1; Minnig v. Nelson, 9 Neb.App. 427, 613 N.W.2d 24 (2000).
[8] See, e.g., In re Change of Name of Andrews, supra note 1.
[9] Id.
[10] Id.
[1] In re Change of Name of Andrews, 235 Neb. 170, 454 N.W.2d 488. 235 Neb. 170, 454 N.W.2d 488 (1990).
[2] R.W.B. v. T.W. ex rel. K.A.W., 23 S.W.3d 266 (Mo.App.2000).
[3] Id. at 268.
[4] Id.
[5] See, e.g., Ostermiller v. Spurr, 968 P.2d 940 (Wyo.1998); Carter v. Reddell, 75 Ark.App. 8, 52 S.W.3d 506 (2001); Daniel v. Moats, 718 So.2d 949 (Fla.App.1998); Montgomery v. Wells, 708 N.W.2d 704 (Iowa App.2005); M.L.M. ex rel. Froggatte v. Millen, 28 Kan. App.2d 392, 15 P.3d 857 (2000); Learn by Houck v. Haskell, 194 A.D.2d 859, 598 N.Y.S.2d 595 (1993).
[6] See, In re M.C.E., 121 S.W.3d 891 (Tex.App. 2003); Learn by Houck v. Haskell, supra note 5; Hamby v. Jacobson, 769 P.2d 273 (Utah App.1989).
[7] In re Change of Name of Andrews, supra note 1.