not subject to such a challenge. Therefore, Dubray could not show prejudice from counsel's purported failure to challenge the hospital statement. Thus, I agree with the majority that Dubray has not shown ineffective assistance of counsel regarding his various admissions.

Wright, J., joins in this concurrence.

_____

State of Nebraska on behalf of Connor H., a minor child, appellee, v. Blake G., appellee, and Amanda H., now known as Amanda G., third-party defendant and appellant.

In re Change of Name of Connor H., by and through his next friend, Amanda G. Amanda G., appellant, v. Blake G., appellee.

___ N.W.2d ___

Filed October 10, 2014.    Nos. S-13-995, S-13-1000.

1. **Minors: Names: Appeal and Error.** An appellate court reviews a trial court's decision concerning a requested change in the surname of a minor de novo on the record and reaches a conclusion independent of the findings of the trial court.
2. **Minors: Names.** The question of whether the name of a minor child should be changed is determined by what is in the best interests of the child.
3. **Minors: Names: Proof.** The party seeking the change in surname has the burden of proving that the change in surname is in the child's best interests.
4. **Minors: Names.** Substantial welfare is related to best interests, because a change in surname is in a child's best interests only when the substantial welfare of the child requires the name to be changed.
5. ____: ____. In Nebraska, there is no preference for a surname—paternal or maternal—in name change cases; rather, the child's best interests is the sole consideration.
6. ____: ____. Nonexclusive factors to consider in determining whether a change of surname is in a child's best interests are (1) misconduct by one of the child's parents; (2) a parent's failure to support the child; (3) parental failure to maintain contact with the child; (4) the length of time that a surname has been used for or by the child; (5) whether the child's surname is different from the surname of the child's custodial parent; (6) a child's reasonable preference for one of the surnames; (7) the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; (8) the degree of community respect associated with the child's present surname and the proposed surname; (9) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and (10) the identification of the child as a part of a family unit.

7. **Names: Child Custody: Presumptions.** No presumption exists in favor of the surname desired by a custodial parent, even if the parent has sole legal and physical custody of the child.

8. **Names.** Name-change decisions are to be made on a case-by-case basis.

Appeals from the District Court for Johnson County: Daniel E. Bryan, Jr., Judge. Judgment in No. S-13-995 reversed, and cause remanded with direction. Judgment in No. S-13-1000 affirmed.

Marc J. Odgaard, of Hanson, Hroch & Kuntz, for appellant.

Diane L. Merwin, of Fankhauser, Nelsen, Werts, Ziskey & Merwin, P.C., for appellee Blake G.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

This appeal addresses the surname of a child born out of wedlock and given his mother's maiden surname. After the mother married and began using her husband's surname, both parents sought to change the child's surname—the father proposing his surname and the mother requesting her married surname. The district court granted the father's request, giving preference to the paternal surname and using a "substantial evidence" standard. But the child's best interests, without any presumption favoring either parent's surname, is the controlling standard. Upon our de novo review, we conclude that the evidence was insufficient to show that a change in the child's surname was in his best interests.

## BACKGROUND

Connor H. was born out of wedlock to Blake G. and Amanda H., now known as Amanda G., in October 2008. Blake signed the birth certificate, which listed Amanda's maiden surname as Connor's surname. Amanda made the decision to use her maiden surname as Connor's surname, and Blake testified that he was "[n]ot really" allowed any input in that decision. Blake and Amanda ceased living together prior to Connor's

birth, and Amanda has been Connor's custodial parent since his birth.

Blake and Amanda entered into a stipulation regarding paternity, child support, and other matters. On December 1, 2009, the district court entered a judgment, styled as an order, granting Amanda sole legal and physical custody of Connor, granting Blake reasonable rights of visitation, and ordering Blake to pay child support.

In December 2011, Amanda married. She then changed her surname to that of her husband.

On January 28, 2013, Blake filed a complaint to modify the December 2009 judgment. He alleged that a material change in circumstances had occurred and requested, among other things, that Connor's surname be changed to Blake's surname.

On August 12, 2013, Amanda initiated a separate case by filing a petition for name change. She alleged that it was in Connor's best interests to change his surname from Amanda's maiden surname to her married surname.

The district court heard both matters in October 2013. At that time, Connor was 4 years old and enrolled in preschool. Evidence established that Connor had leukemia and that he was covered under Amanda's insurance. Both parents were involved in his medical care.

Blake was able to build a strong relationship with Connor despite their different surnames. Connor referred to Blake as "'Dad.'" Amanda was supportive of Blake's relationship with Connor and allowed Blake additional visitation at times. Blake testified that he exercised his visitation rights and paid child support. At the time of trial, he was current on child support, but he had been in arrears until approximately May 2011. Blake attended Connor's T-ball games and school activities. Blake also took Connor hunting and fishing and to watch football games. Connor knew his paternal grandparents and was involved with both of Blake's brothers.

Amanda wished to change Connor's surname to match her married surname. Because Amanda, Connor's stepfather, and Connor's half sister have the same surname, Amanda thought that Connor "would feel more part of the family and feel like he belongs if he could have the same last name as everybody

that he lives with." Amanda testified that Connor asked about her last name and that of his half sister and that he knew he had a different last name. As it pertained to Amanda's state of mind and not for the truth of the matter, the court allowed Amanda to testify that Connor had told her that he would like his last name to be Amanda's married surname. Amanda testified that Connor loves his stepfather and that Connor has a great relationship with his stepgrandparents, who live in the same town.

Following the presentation of evidence, the district court stated:

> Well, the Court doesn't find that there's evidence to change [Connor's surname] to [Amanda's married surname]. I think that's like a de facto adoption. I'm not going to do that; that would just simply be wrong.
>
> Now, the evidence here is that the dad has had a good contact with the child, the natural father, and he's kept contact with the child. There's no reason to be changing the name to a stepfather's name.
>
> The question really comes down to whether or not there's evidence supplied that it would be in the best interest of the child to change the name at all.
>
> Now, mom says there is because she has changed her name now from [her maiden surname to her married surname]. And, of course, in the case of [Amanda's] name change request, I'm not going to find it's in the best interest to change it to [Amanda's married surname], so I'm going to deny [Amanda's] application in that regard.
>
> The father — the natural father's allegation under the paternity law to change the name to the — to his name I'm going to find is probably in the best interest of the minor child. Now, that may be considered an old-fashioned statement, but, on the other hand, I think there's substantial evidence here in this sense. Now, substantial evidence defined in Nebraska's law is — actually, it comes down to being more than a scintilla and less than a preponderance, which is interesting because the name "substantial" means that it would be substantial but, yet,

that's the definition. I deal with that definition every day and in dealing with appeals and so forth.

But the Court is going to find that there's been primary contact; the contact with the natural father has been good with the minor child. And since mom's name has already been changed, [her maiden surname] no longer is really relevant to this young man, and so if he was going to take a name, it would seem to me it would be in the best interest to take the natural father's name instead of taking what would be — in the Court's thinking would be a stepfather's name.

On October 15, 2013, the district court entered an order in the paternity case changing Connor's surname to Blake's surname. On October 28, the district court entered a judgment denying Amanda's separate petition for change of name. The court found that changing Connor's surname to Amanda's married surname "would amount to a de facto adoption" and that granting the petition would not be in the child's best interests.

Amanda filed a timely appeal in each case. The parties agreed to consolidate the appeals for briefing, argument, and disposition. We moved the cases to our docket under our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

## ASSIGNMENTS OF ERROR

Amanda assigns, reordered, that the district court erred in denying her petition for name change and in granting Blake's complaint to modify the decree, because the court (1) applied an incorrect burden of proof, (2) wrongfully gave preference to Blake's surname, and (3) ignored evidence which supported the name change to Amanda's married surname.

## STANDARD OF REVIEW

[1] An appellate court reviews a trial court's decision concerning a requested change in the surname of a minor de novo

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

on the record and reaches a conclusion independent of the find-ings of the trial court.[2]

## ANALYSIS

### Burden of Proof

[2,3] The question of whether the name of a minor child should be changed is determined by what is in the best interests of the child.[3] The party seeking the change in surname has the burden of proving that the change in surname is in the child's best interests.[4] Cases considering this question have granted a change of name only when the substantial welfare of the child requires the name to be changed.[5]

[4] Amanda contends that the district court applied an incor-rect burden of proof. The court recognized that the question was whether there was evidence that a name change would be in the child's best interests, but the court also referred to a "substantial evidence" standard, which it defined as "more than a scintilla and less than a preponderance." Thus, the court may have conflated "substantial evidence" with the "substantial welfare" concept referred to in name-change cases. Substantial welfare is related to best interests, because a change in sur-name is in a child's best interests only when the substantial welfare of the child requires the name to be changed.[6] To the extent the court deviated from a best interests standard, it did so in error. But our review on appeal is de novo on the record. And in conducting our review, we will consider only whether the evidence established that Connor's best interests necessitate a name change.

---

[2] *In re Change of Name of Slingsby*, 276 Neb. 114, 752 N.W.2d 564 (2008).

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] See, *In re Change of Name of Slingsby, supra* note 2; *In re Change of Name of Andrews*, 235 Neb. 170, 454 N.W.2d 488 (1990); *Cohee v. Cohee*, 210 Neb. 855, 317 N.W.2d 381 (1982); *Spatz v. Spatz*, 199 Neb. 332, 258 N.W.2d 814 (1977).

### Preference for Paternal
### Surname

Amanda argues that the district court wrongfully gave a preference to the surname of Blake, the biological father. She points to the following statement by the court: "[T]he natural father's allegation under the paternity law to change the name to . . . his name I'm going to find is probably in the best interest of the minor child. Now, that may be considered an old-fashioned statement . . . ." It is not clear from this statement that the court accorded a preference for the paternal surname in making a best interests determination. But to the extent the court may have done so, we expressly disapprove of such a practice.

[5] Over 30 years ago, we recognized that no automatic preference as to the surname of a child born in wedlock exists in Nebraska law.[7] We likewise conclude that there should be no automatic preference as to the surname of a child born out of wedlock. We acknowledge that some courts have recognized a preference for the paternal surname.[8] But other courts have rejected that practice.[9] We conclude that in Nebraska, there is no preference for a surname—paternal or maternal—in name change cases; rather, the child's best interests is the sole consideration.[10]

---

[7] See *Cohee v. Cohee, supra* note 6.

[8] See, e.g., *D. R. S. v. R. S. H.*, 412 N.E.2d 1257 (Ind. App. 1980); *Burke v. Hammonds*, 586 S.W.2d 307 (Ky. App. 1979); *Application of Tubbs*, 620 P.2d 384 (Okla. 1980).

[9] See, e.g., *Pizziconi v. Yarbrough*, 177 Ariz. 422, 868 P.2d 1005 (Ariz. App. 1993); *In re Marriage of Schiffman*, 28 Cal. 3d 640, 620 P.2d 579, 169 Cal. Rptr. 918 (1980); *In re Marriage of Gulsvig*, 498 N.W.2d 725 (Iowa 1993); *Gubernat v. Deremer*, 140 N.J. 120, 657 A.2d 856 (1995); *Bobo v. Jewell*, 38 Ohio St. 3d 330, 528 N.E.2d 180 (1988); *Ribeiro v. Monahan*, 524 A.2d 586 (R.I. 1987); *Keegan v. Gudahl*, 525 N.W.2d 695 (S.D. 1994); *Barabas v. Rogers*, 868 S.W.2d 283 (Tenn. App. 1993); *Hamby v. Jacobson*, 769 P.2d 273 (Utah App. 1989); *In re Wilson*, 162 Vt. 281, 648 A.2d 648 (1994).

[10] See, *In re Marriage of Schiffman, supra* note 9; *Ribeiro v. Monahan, supra* note 9; *Keegan v. Gudahl, supra* note 9.

Sufficiency of Evidence

Lastly, we consider Amanda's claim that the district court ignored the evidence which supported the name change to her married surname and thereby erred in denying her petition for name change and in granting Blake's complaint to modify the decree. As discussed above, whether Connor's name should be changed is driven by his best interests.

Before engaging in a best interests analysis, we briefly address some concerning statements by the district court. The court stated that changing Connor's name to Amanda's married surname would be "like a de facto adoption" and "would just simply be wrong." The court also stated that "[t]here's no reason to be changing the name to a stepfather's name" and that "it would be in the best interest to take the natural father's name instead of taking what would be — in the Court's thinking would be a stepfather's name." In making these statements, the court seemingly overlooked the fact that Amanda's married surname is *her* surname—not just "a stepfather's name." The court's focus on Amanda's married surname as being merely a stepfather's surname was clearly misplaced.

[6] We have previously set forth a list of nonexclusive factors to consider in determining whether a change of surname is in the child's best interests.[11] These factors are (1) misconduct by one of the child's parents; (2) a parent's failure to support the child; (3) parental failure to maintain contact with the child; (4) the length of time that a surname has been used for or by the child; (5) whether the child's surname is different from the surname of the child's custodial parent; (6) a child's reasonable preference for one of the surnames; (7) the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; (8) the degree of community respect associated with the child's present surname and the proposed surname; (9) the difficulties, harassment, or embarrassment that the child may experience

---

[11] See, *In re Change of Name of Slingsby, supra* note 2; *In re Change of Name of Andrews, supra* note 6.

from bearing the present or proposed surname; and (10) the identification of the child as a part of a family unit.[12]

The application of these nonexclusive factors to the evidence does not support a finding that a name change—either to Blake's surname or to Amanda's married surname—is in Connor's best interests. Several factors either weigh against a change or do not militate in favor of one parental surname rather than the other: Connor had used his present surname for nearly 5 years at the time of trial; the evidence did not establish Connor's preference for one of the surnames; there had been no misconduct by either party; both parents had supported Connor (although Blake had been in arrears on his child support obligation, he was current at the time of trial); both parents maintained contact with Connor; and both parents had been able to form and maintain a relationship with Connor despite the difference in surnames. Amanda opined that Connor would feel more a part of the family if he had the same surname as the rest of the household, but the evidence did not establish difficulties in identifying Connor as part of a family unit. In our view, only one factor weighed in favor of changing Connor's surname: Connor's surname was different from the surname of Amanda, Connor's custodial parent.

Amanda argues that the district court should have considered that she has sole legal custody of Connor. She contends that as Connor's legal custodian, she has the responsibility and authority to make fundamental decisions for Connor and that she has determined that it is in the best interests of Connor for his surname to be changed to Amanda's married surname.

Her contention finds some support in case law from other jurisdictions.[13] The Supreme Court of New Jersey adopted

---

[12] *In re Change of Name of Slingsby, supra* note 2.

[13] See, e.g., *Cormier v. Quist*, 77 Mass. App. 914, 933 N.E.2d 153 (2010); *Gubernat v. Deremer, supra* note 9. See, also, *Aitkin County Family Serv. Agency v. Girard*, 390 N.W.2d 906, 909 (Minn. App. 1986) ("absent evidence that the change will be detrimental to the preservation of the children's relationship with their father, we see no reason to put aside the preference expressed by their custodial parent").

a strong presumption in favor of the surname chosen by the custodial parent, noting the "judicial and legislative recognition that the custodial parent will act in the best interest of the child."[14] A Massachusetts appellate court reasoned that "[a] decision to change a child's surname is a significant life decision; in making such a decision in the child's best interests, the allocation of custodial responsibility should at least be considered."[15] But Nebraska has not recognized a presumption in favor of the surname chosen by the custodial parent.

Long ago, we "refuse[d] to suggest or hold that a presumption exists in favor of the custodial parent."[16] Rather, we stated that "custody, along with the other factors, is to be considered in determining the best interests of the child."[17] Although we made those statements concerning a name change for a child in the context of a marital dissolution action, we see no reason to apply a custodial—legal or physical—presumption regarding a child born out of wedlock.

[7] Other courts have similarly refused to adopt a presumption in favor of the surname desired by the custodial parent.[18] The Supreme Court of Arkansas reasoned that "such an inflexible resolution will not serve the best interests of the children involved."[19] Courts in Utah and Vermont have observed that "the best interests of the child test can appropriately include consideration of the custodial situation of the child, as well as other relevant factors"[20] and that a presumption "would be inconsistent with the best interests analysis because it is not the custodial parent's preference, but the best interests of the child that 'is the paramount consideration in determining

---

[14] *Gubernat v. Deremer, supra* note 9, 140 N.J. at 144, 657 A.2d at 869.

[15] *Cormier v. Quist, supra* note 13, 77 Mass. App. at 916, 933 N.E.2d at 155-56.

[16] *Cohee v. Cohee, supra* note 6, 210 Neb. at 861, 317 N.W.2d at 384.

[17] *Id*.

[18] See, e.g., *Huffman v. Fisher*, 337 Ark. 58, 987 S.W.2d 269 (1999); *In re Marriage of Schiffman, supra* note 9; *Hamby v. Jacobson, supra* note 9; *In re Wilson, supra* note 9.

[19] *Huffman v. Fisher, supra* note 18, 337 Ark. at 70, 987 S.W.2d at 275.

[20] *Hamby v. Jacobson, supra* note 9, 769 P.2d at 277.

whether a child's name should be changed.'"[21] We agree. No presumption exists in favor of the surname desired by a custodial parent, even if the parent has sole legal and physical custody of the child. We will continue to apply a best interests of the child test exclusive of any presumption favoring one parent's surname over the other.

We are not unmindful that declining to change Connor's surname leaves him with a surname different from the surnames of both of his parents. We were faced with a similar situation in *In re Change of Name of Slingsby*.[22] In that case, as in the instant case, the child was born out of wedlock and given the mother's surname, the mother subsequently married and changed her name, and the mother sought to change the child's surname from her maiden name to her married surname. The district court denied the petition, determining that the mother failed to prove that the name change was in the child's best interests. On appeal, we affirmed. We noted that there was no evidence that the child "would be more or less likely to identify himself with a family unit with or without a change in his surname."[23]

The dissent in *In re Change of Name of Slingsby* raised serious concerns. It pointed out that "where the child bears neither the mother's new surname nor the biological father's surname, the child will likely be questioned in the future as to why he does not carry the last name of either his mother or his father."[24] The dissent noted the mother's desire for the child's name to match potential siblings and reasoned, "There is no question that sharing the same surname within a family unit provides security, stability, and a feeling of identity and limits the potential difficulties, confusion, and embarrassment that may arise relating to the paternity of the child."[25]

---

[21] *In re Wilson, supra* note 9, 162 Vt. at 284, 648 A.2d at 650.

[22] *In re Change of Name of Slingsby, supra* note 2.

[23] *Id*. at 119, 752 N.W.2d at 568.

[24] *Id*. at 121, 752 N.W.2d at 569 (Gerrard, J., dissenting; Miller-Lerman, J., joins).

[25] *Id*. at 122, 752 N.W.2d at 570 (Gerrard, J., dissenting; Miller-Lerman, J., joins).

Several courts have reached a similar conclusion. In *Carter v. Reddell*,[26] the child was given the mother's maiden surname, the mother married and changed her surname, and the father filed a petition requesting that the child's surname be changed to that of the father. In affirming the name change, the appellate court stated that it did not appear the name change would affect the child's relationship with either parent, that the father's surname would not change, and that although the child had gone by her surname for 4 years, "there would be very little stigma attached if she changes her last name now, at the beginning of her school attendance."[27] Faced with a similar situation, a Missouri appellate court stated, "We fail to see how the best interest of this child is served by setting him apart from other children in the community who may carry either their father's or mother's surname."[28] In *M.L.M. ex rel. Froggatte v. Millen*,[29] the trial court granted the father's request to change the child's surname to that of the father, reasoning that because the mother had married and taken her husband's last name, it was in the child's best interests that the child's last name match that of the other biological parent. The appellate court affirmed, stating that "[t]he net effect of [the mother's] remarriage and refusal to consent to a name change leaves [the child] bearing a last name not used by either parent, particularly the custodial parent."[30]

But other courts have declined to change a child's surname, even when the child's surname is different from both parents. In *In re Berger ex rel. K.C.F.*,[31] the father filed an action to change the child's surname to that of the father so that the child would have the same surname as one of his parents. At that time, the child was 7 years old. The father testified that

---

[26] *Carter v. Reddell*, 75 Ark. App. 8, 52 S.W.3d 506 (2001).

[27] *Id*. at 13, 52 S.W.3d at 509.

[28] *R.W.B. v. T.W. ex rel. K.A.W.*, 23 S.W.3d 266, 268 (Mo. App. 2000).

[29] *M.L.M. ex rel. Froggatte v. Millen*, 28 Kan. App. 2d 392, 15 P.3d 857 (2000).

[30] *Id*. at 394, 15 P.3d at 859.

[31] *In re Berger ex rel. K.C.F.*, 778 N.W.2d 579 (N.D. 2010).

the child indicated a desire to have the father's surname and that the child had encountered "awkward situations" due to having a different last name.[32] The mother testified that when she changed her name, the child's only concern was that he would not have to change his surname. Upon her inquiry, the child said he would not be sad or hurt if she had a different surname than the child. In affirming the denial of the petition for name change, the appellate court reasoned that the child was now in school, that he had an established identity, that friends have known him by his name for some time, and that changing his surname now could invite more questions from his peers. In a similar situation, a North Dakota appellate court affirmed a trial court's denial of a mother's petition to change the child's surname to match her own. The trial court in that case had reasoned:

> "Whatever the Court's decision, there are going to be awkward moments in the child's future when she will be forced to explain her name. It will be more confusing for her to explain that her stepfather is not her father though she has his last name than to explain that she has her mother's maiden name. If the petitioner and her husband divorce, the petitioner said [the child's] surname would remain the stepfather's name. Not only would that be confusing, but then [the child's] surname would be that of a man to whom she has no legal or biological connections. Finally, the Court believes allowing the name change could lead to alienation of the child from the respondent, even if there is no intent to do so."[33]

As the North Dakota court cogently explained, some awkwardness is probably inevitable.

[8] In each of the cases discussed above, a child was born out of wedlock and given his mother's maiden name, the mother later married and changed her surname, and one of the parents brought an action to change the child's surname. But courts reached different conclusions from case to case. The

---

[32] *Id.* at 583.

[33] *Grad ex rel. Janda v. Jepson*, 652 N.W.2d 324, 325 (N.D. 2002).

differing conclusions reinforce the concept that name-change decisions are to be made on a case-by-case basis.[34]

The case before us presents a twist in that both parents sought to change Connor's surname, but the *evidence* does not establish that Connor's best interests necessitate a change in his surname. The testimony disclosed Blake's and Amanda's respective reasons for wanting to change Connor's surname, but the evidence fell short of demonstrating that Connor's substantial welfare required such a change. In the future, Connor may very well decide that he wants to change his surname. But at this time, the evidence is simply insufficient to show that a change to either Blake's surname or Amanda's married surname would promote his best interests. We therefore reverse the order in the paternity action granting Blake's request to change Connor's surname and affirm the judgment denying Amanda's separate petition to change Connor's surname.

## CONCLUSION

Upon our de novo review of the record, we conclude that neither parent met his or her burden to show that a change in Connor's surname was in his best interests. Accordingly, in case No. S-13-995, we reverse the district court's order changing Connor's surname to that of Blake and remand the cause with direction to deny the requested relief. In case No. S-13-1000, we affirm the judgment dismissing Amanda's petition.

JUDGMENT IN NO. S-13-995 REVERSED, AND
CAUSE REMANDED WITH DIRECTION.
JUDGMENT IN NO. S-13-1000 AFFIRMED.

---

[34] See *Matthews v. Smith*, 80 Ark. App. 396, 97 S.W.3d 418 (2003).

MILLER-LERMAN, J., concurring.

I concur and write separately only to observe that unlike *In re Name Change of Slingsby*, 276 Neb. 114, 752 N.W.2d 564 (2008), this record does not contain testimony of a trained fact witness or professional, the testimony of whom regarding the impact of a name change on the child could be helpful in meeting a party's burden of proof.