IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


KOLAR V. TESTER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STACI ANE KOLAR, APPELLEE AND CROSS-APPELLANT,

V.

BRANDON TESTER, APPELLANT AND CROSS-APPELLEE.


Filed June 27, 2017.    No. A-16-1072.


Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed in part, and in part reversed and remanded with directions.

Mitchell C. Stehlik, of Lauritsen, Brownell, Brostrom & Stehlik, P.C., L.L.O., for appellant.

J.D. Sabott, of Shamberg, Wolf, McDermott & DePue, for appellee.


INBODY, RIEDMANN, and ARTERBURN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Brandon Tester appeals the order of the district court for Hall County granting legal and primary physical custody of his minor child to the child's mother, Staci Ane Kolar. Kolar cross-appeals from the district court's order granting Tester's request to change the child's surname. Finding that the court erred in granting the name change and abused its discretion in awarding the dependency exemption to Kolar, we affirm in part, and in part reverse and remand the cause with directions.

- 1 -

## II. BACKGROUND

Kolar and Tester are the biological parents of a minor son, born in January 2011. The parties were never married but had been in a dating relationship. They separated prior to the child's birth.

In February 2015, Kolar filed a complaint to establish paternity, custody, and child support. Tester filed an answer and counterclaim, in which he requested legal and physical custody of the child. A temporary order granted Kolar primary physical custody and granted Tester parenting time every other weekend. Tester was ordered to pay $312 per month in child support.

Trial was held in October 2016. At that time, the child was 5 years old and had recently started kindergarten. The parties submitted a joint proposed parenting plan in which they requested joint legal custody.

At trial, Tester testified that he currently lived with his fiancée and her 9 year old daughter. He had a 10 year old son from a previous relationship with whom he had visitation every other weekend. Tester said that he did not meet his and Kolar's son until his first birthday. He testified that Kolar did not notify him when she was giving birth and that she did not allow him to see their child on a regular basis until 2014.

Tester admitted that in February 2015, he was involved in a domestic assault incident with Kolar wherein he assaulted her over a visitation dispute. He admitted that their child was present when this occurred. As a result of this incident, Tester was arrested and charged with third-degree domestic assault. He was ultimately convicted and was on probation at the time of trial while he completed a domestic violence class.

Tester alleged that Kolar had been difficult in working out parenting time with his son and that she had previously attempted to limit his relationship with their child. Tester admitted that as of the time of trial, he had not paid any of the child's daycare or medical expenses, nor had he attended any doctor's appointments with the child. He did provide health insurance for the child through his employer, although it was at no additional cost to him because he already provided insurance for his other son through his employer's family plan.

Tester testified that he worked at Jerry's Sheet Metal and made $21 per hour. He said that he was not guaranteed any hours over 40 per week but that he typically worked 45 to 50 hours each week. Tester said that overtime pay was $32 per hour.

Tester asked the district court to change the child's surname from Kolar to Tester because he said that Kolar "is not a blood name," as it originated with Kolar's stepfather. Tester said that he believed having the same surname as his son would improve their relationship as well as the relationship between this child and his older son. He further testified that he did not believe it would be difficult for the child to change his name when he was in kindergarten.

Kolar testified that she had lived with the child for his entire life and she had provided all of his financial support and taken him to all of his doctor's appointments. She admitted that she did not allow Tester to see the child at various points in the past but claimed that it was due to her fear that Tester would not return the child after an incident wherein he failed to bring the child back at the agreed upon time. Kolar also testified that their son was afraid of Tester after the domestic assault incident and did not initially want to go with him for visitation. Despite admitting

to preventing Tester from seeing their child at times, Kolar said that it was not her intention to keep the child from him.

Kolar asked the court to deny Tester's request to change the child's surname. She said that Kolar had been her legal surname since she was young and that "blood [did not] mean anything." Kolar said that the child was just starting school and learning who he was and that she believed it would be difficult for him if his surname was changed.

The district court granted Kolar legal and primary physical custody of the child, with Tester to have parenting time every other weekend, on alternating holidays, and for eight continuous weeks during the summer. The court attached its child support calculations to its decree and ordered Tester to pay $524 per month in child support. Furthermore, the court ordered Tester to pay half of all work or education-related daycare expenses as well as half of the child's medical expenses over the first $480 annually. Tester was ordered to keep the child on his health insurance.

The court also granted Tester's request to change the child's surname, summarily stating that it found "that a name change is in the minor child's best interests." Tester appeals and Kolar cross-appeals.

## III. ASSIGNMENTS OF ERROR

Tester assigns, restated, that the district court erred in (1) failing to award him primary custody; (2) failing to include several of his requested provisions in the parenting plan; (3) failing to divide the dependency exemption on an equal basis; (4) determining the amount of child support; and (5) failing to grant a child support abatement when he has custody of the child during the summer. Tester also assigns that the district court's decree contains several "minor yet significant typographical errors."

On cross-appeal, Kolar assigns that the district court erred in granting Tester's request to change the child's surname.

## IV. STANDARD OF REVIEW

Child custody and visitation determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016); *McLaughlin v. McLaughlin*, 264 Neb. 232, 647 N.W.2d 577 (2002). An abuse of discretion exists when a judge elects to act or refrains from acting and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result. *McLaughlin v. McLaughlin, supra*.

Domestic matters such as child support and the child dependency tax exemption are entrusted to the discretion of trial courts. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). An appellate court reviews a trial court's determinations on such issues de novo on the record to determine whether the trial judge abused his or her discretion. *Id*.

An appellate court reviews a trial court's decision concerning a requested change in the surname of a minor de novo on the record and reaches a conclusion independent of the findings of the trial court. *In re Change of Name of Slingsby*, 276 Neb. 114, 752 N.W.2d 564 (2008). Provided, however, that where credible evidence is in conflict on a material issue of fact, the appellate court

considers and gives weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## V. ANALYSIS

### 1. PRIMARY CUSTODY

Tester argues that the district court erred in failing to award him primary custody of the minor child. Tester claims that there is evidence that Kolar has previously tried to prevent and limit the opportunity for him to have a meaningful relationship with their son. He argues that he is in a more stable position than Kolar is and that it would therefore be in the child's best interests for him to have primary physical custody. We disagree.

Child custody is determined by parental fitness and the child's best interests. *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007). When both parents are found to be fit, the inquiry for the court is the best interests of the child. *Id*. In making such a determination under Neb. Rev. Stat. § 42-364 (Reissue 2016), the court may consider factors such as moral fitness of the child's parents; the parents' sexual conduct; the respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy the educational needs of the child; as well as other factors relevant to the general health, welfare, and well-being of the child. *Id*.

Here, Tester claims that he is in a better position to have primary custody because he has stable employment, lives with his fiancée and her child, and has a home with enough room for each child to have his or her own bed. Tester argues that Kolar has previously attempted to prevent him from having a relationship with their son and has made it difficult for Tester to play a meaningful role in his life.

The district court found that both parties are fit parents. It found that Tester had a limited relationship with the minor child but that Kolar had, to some extent, played a role in limiting that relationship. The court found that, in the absence of compelling circumstances, it would not be in the child's best interests to disrupt his relationship with his mother, especially in light of the fact that he recently began school.

We agree with the district court that both Tester and Kolar are fit and clearly love their child. Each party is employed on a full time basis and each has adequate housing. Although the evidence supports a finding that Kolar has previously prevented Tester from spending time with their son there is also evidence that Tester committed an act of domestic assault upon Kolar in the presence of their son. Furthermore, Tester never sought custody prior to Kolar initiating this case. The evidence shows that Kolar has been adequately providing for the parties' son for the entirety of his life and witnesses testified that she is an attentive, loving mother. Accordingly, the district court did not abuse its discretion in determining that it is in the child's best interests for Kolar to have primary custody.

### 2. PARENTING PLAN PROVISIONS

Tester claims that the district court erred in failing to include several provisions in the parenting plan. Specifically, he alleges that the court failed to include a provision allowing for

division of time for the minor child during fall and spring school breaks, a provision dividing parenting time for the child's birthday, ordering visitation for Mother's Day and Father's Day to consist of the entire weekend, allowing Tester to pick the child up early from school on early release days, and awarding the parties joint legal custody.

Aside from the request for joint legal custody, Tester did not request any of the above provisions in his counterclaim or at trial. Likewise, the proposed parenting plan that was submitted to the court by both parties contained none of those provisions. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Scurlocke v. Hansen*, 268 Neb. 548, 684 N.W.2d 565 (2004); *McDonald v. McDonald*, 21 Neb. App. 535, 840 N.W.2d 574 (2013). Because those issues were not presented to the trial court, we do not consider them on appeal.

The only provision that Tester did present to the district court of which he now complains, was his request for joint legal custody of the parties' son. However, the court found that it was "in the best interests of the minor child that legal and physical custody" should be placed with Kolar. As discussed above, the parties presented evidence that the child had lived his entire life with Kolar and that he had a limited relationship with Tester, albeit in part due to Kolar's actions. Kolar testified that she has provided for the child financially, has overseen all of his medical care and appointments, and has been the sole contact with the child's teachers. Based on such evidence, we find no abuse of discretion in the district court's determination that it was in the minor child's best interests to award legal custody to Kolar.

## 3. DEPENDENCY EXEMPTION

Tester argues that the district court erred in failing to divide the dependency tax exemption between the parties on an equal basis. He claims that because both parties are supporting the minor child and he is providing more than half of the financial support, it is equitable to divide the dependency exemption by awarding it to each party in alternating years. We agree.

The federal government allows taxpayers to exclude from their income an exemption amount for each individual who is a dependent of the taxpayer in the taxable year. *McDonald v. McDonald, supra*. The Nebraska Supreme Court has held that a tax dependency exemption is an economic benefit nearly identical to an award of child support or alimony. *Anderson v. Anderson, supra*. In general, the custodial parent is presumptively entitled to the federal tax exemption for a dependent child. *Id.*; *Hall v. Hall*, 238 Neb. 686, 472 N.W.2d 217 (1991). However, state courts may exercise their equitable power to allocate the dependency exemption between custodial and noncustodial parents and order the custodial parent to execute a waiver of his or her right to declare the tax exemption if the situation of the parties so requires. *Hall v. Hall, supra*.

The federal government grants a dependency exemption to a parent who provides support to a dependent minor. *Anderson v. Anderson, supra*. The primary purpose for permitting a trial court to reallocate the exemption between parents is to allow the party paying support to have more disposable income from which to make such a payment. *Id.* Accordingly, allocation of the exemption to the noncustodial parent is not warranted if the parent pays a relatively small amount of child support. *Id*.

Here, Tester asked the district court at trial to order that the dependency exemption for the parties' child be divided, awarding it to each party in alternating years. The district court did not

specifically address this request in its decree. However, because it awarded primary physical custody to Kolar, it can be presumed that Tester's request to divide the exemption was denied. See *Hall v. Hall, supra* (applying federal presumption of dependency exemption to custodial parent where decree did not specifically allocate exemption).

As the custodial parent, Kolar is presumptively entitled to the dependency exemption. However, we recognize that Tester was ordered to contribute 56 percent of the child's monthly support. Additionally, the court ordered Tester to pay half of all work or education-related daycare expenses and half of medical expenses over the first $480 annually. While we acknowledge that, as the custodial parent, Kolar may have additional expenses for the child above the amount for which the child support guidelines determined she is responsible, we also acknowledge that Tester is paying over half of the expected monthly expenses for the child. See *Prochaska v. Prochaska*, 6 Neb. App. 302, 573 N.W.2d 777 (1998).

The Nebraska Supreme Court has held that allocation of the dependency exemption to the noncustodial parent is not warranted if that parent pays a relatively small amount of child support. See *Anderson v. Anderson, supra*. While the phrase "relatively small amount" of support is not clearly defined, we find guidance from prior case law. In *Anderson v. Anderson, supra*, the Nebraska Supreme Court reversed the trial court's decree allowing a noncustodial parent who was paying $50 per month in child support to claim the tax dependency exemption every other year. The court concluded that because the custodial parent's monthly share of support was about $850, the noncustodial parent did not overcome the presumption that the custodial parent was entitled to claim the exemption every year.

On the other hand, in *Prochaska v. Prochaska, supra,* we determined that each parent was entitled to claim one tax dependency exemption for their two children because both parents were responsible for "approximately one-half" of their children's support.

Here, it appears as though Tester will be responsible for approximately one-half of his son's expenses. In addition to being ordered to pay 56 percent of the anticipated expenses, Tester was ordered to pay half of daycare costs and medical expenses. Kolar did not testify to having additional monthly costs related to the parties' child, such as costs associated with activities or sports, which she would have to pay out of pocket. While we recognize that as the custodial parent, Kolar may encounter additional incidental expenses, we cannot find that Tester is paying a "relatively small amount" of child support. Rather, we determine that he is paying approximately half of the costs, thereby entitling him to claim a tax dependency every other year.

The dependency exemption was intended to be granted to a parent who provides support to a dependent child. Tester is doing just that by paying approximately half of the child's monthly support and paying half of his daycare and after the first $480, half of his medical expenses, despite the fact that he is not the custodial parent. We find that Tester has sufficiently rebutted the presumption that Kolar, as the custodial parent, is entitled to claim the exemption, and that the district court abused its discretion in awarding her the entire exemption. Accordingly, we reverse and remand the order awarding the full dependency exemption to Kolar with directions to enter an order alternating the exemption between the parties every other year. Tester, however, is only entitled to the exemption if he is current in his child support obligations. See *McDonald v McDonald, supra* (holding that dependency exemption is available to parent who provides support

to minor child and if parent is not current, he or she is not supporting minor in way court deemed necessary).

### 4. CHILD SUPPORT AMOUNT

Tester claims that the district court erred in determining the amount of child support by using figures that do not accurately reflect his income. We disagree.

Tester argues that the district court erred in calculating his total monthly income by using a greater number of hours than he typically works. The court multiplied his wage, $21 per hour, by 45 hours per week to arrive at a total monthly income of $4,095. Tester claims that the court should have multiplied his wage by 40 hours per week for a total income of $3,640 per month. He argues that he is only guaranteed 40 hours per week, even though he occasionally works overtime, and the court should have used 40 hours in its calculations.

At trial, Tester testified that he works 45 to 50 hours a week on average. He stated that he works overtime "[w]hen [he] can," and that his wage for overtime work is $32 per hour. While Tester may not be guaranteed any hours over 40, by his own admission, he typically works at least five additional hours. Furthermore, Tester is paid at a higher rate for the additional hours that he works each week. We find no abuse of discretion in the court's use of the lowest average number of hours per week given by Tester, particularly in light of the fact that Tester earns a higher wage for any hours over 40 and such higher wage was not factored into the court's calculations. Accordingly, we find no merit to this assignment of error.

### 5. CHILD SUPPORT ABATEMENT

Tester's next assignment of error is that the district court erred by failing to grant a child support abatement for the time that he has custody of the minor child during the summer. He argues that the court should not have ordered him to pay the full amount of child support during the eight weeks in the summer when the child is with him because, while he has custody of the child, he will also be providing additional support for the child and Kolar will not be providing any support. We disagree.

While we acknowledge that Tester is likely to incur additional incidental expenses during the time that the minor child spends with him during the summer, that does not mean that Kolar, as the custodial parent, would not also incur any expenses related to the child over that period. In *Pearson v. Pearson*, 285 Neb. 686, 828 N.W.2d 760 (2013), the Nebraska Supreme Court found that a custodial parent has some fixed and constant expenses in raising a child that do not decrease during extended periods of visitation with the noncustodial parent. Such expenses will still exist during the eight weeks that the parties' child spends with Tester in the summer. We also note that during that time, Kolar will have visitation with the child every other weekend, which will result in additional expenses. We therefore find that the district court did not abuse its discretion in refusing to order a child support abatement while Tester has the child during the summer.

### 6. TYPOGRAPHICAL ERRORS

Tester assigns as error several typographical errors contained in the district court's decree. Specifically, he asserts that the decree incorrectly states his middle name and that the section regarding the minor child's name change states that the Plaintiff requested the change when, in

fact, it was the Defendant who did so. Before an error requires a reversal it must be determined that it was prejudicial to the rights of the party against whom it was made. *McClellen v. Dobberstein*, 189 Neb. 669, 204 N.W.2d 559 (1973). While neither of these errors is prejudicial, because we are remanding the cause with instructions, we further instruct that the decree be amended to reflect Tester's correct middle name and that Tester requested the name change.

### 7. NAME CHANGE

In her cross-appeal, Kolar argues that the district court erred in changing the minor child's surname from Kolar to Tester. She claims that Tester did not meet his burden in proving that the name change was in the child's best interests. We agree.

The question of whether the name of a minor child should be changed is determined by what is in the best interests of the child. *State on behalf of Connor H. v. Blake G.*, 289 Neb. 246, 856 N.W.2d 295 (2014). The party seeking the change in surname has the burden of proving that the change is in the child's best interests. *Id*. Cases considering this question have granted a change of name only when the substantial welfare of the child requires the name to be changed. *Id*. On appeal, a trial court's decision is reviewed de novo on the record. *Id*.

In Nebraska, there is no preference for a surname, either maternal or paternal, for children regardless of whether the child was born in or out of wedlock. *Id*. Instead, courts review a list of nonexclusive factors to determine whether a change of surname is in the child's best interests. *Id*. These factors include (1) misconduct by one of the child's parents; (2) a parent's failure to support the child; (3) parental failure to maintain contact with the child; (4) length of time that a surname has been used for or by the child; (5) whether the child's surname is different from that of the child's custodial parent; (6) a child's reasonable preference for one of the surnames; (7) the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; (8) the degree of community respect associated with the child's present surname and the proposed surname; (9) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and (10) the identification of the child as a part of a family unit. *Id*.

In the present case, the trial court summarily stated that the change in surnames was in the best interests of the child without including a review of the above listed factors. Because our standard of review is de novo on the record, we now examine the factors to be considered in determining whether a name change was in the child's best interests.

### (a) Parental Misconduct

Tester testified that Kolar had intentionally prevented him from seeing the parties' minor child in the past and that she had limited his ability to form a relationship with the child. Kolar admitted that she had withheld visits and refused to let Tester see their son, although she attributed part of her actions to fear that Tester would take their son following an incident in which he failed to return the child to Kolar as agreed. The parties also testified to an incident of domestic assault over the issue of visitation in which Tester assaulted Kolar in the presence of the child.

Based on the parties' testimony, it appears that there has been a certain degree of misconduct on the part of both parents, Kolar in refusing and limiting visitation and Tester in not

returning the child as agreed and assaulting Kolar in the child's presence. Overall, this factor does not weigh in favor of either parent.

### (b) Parental Failure to Support Child

Kolar testified that she has supported and provided for the child since birth and that he has lived with her at all times. Conversely, Tester admitted that prior to this case, he never paid for any of the child's daycare or medical expenses. Tester has included the child on his health insurance plan, although we note that he did so at no additional cost to him. While Tester does appear to be taking appropriate steps to support the child now, he has not always done so in the past. Therefore, we find this factor favors Kolar.

### (c) Parental Failure to Maintain Contact With Child

There was evidence presented at trial that Tester had a limited relationship with the child prior to the initiation of the present case and sometimes long periods of time would go by wherein Tester did not see the child. As discussed above, some of that may be attributed to Kolar's actions and the restrictions she put on Tester's ability to see the child and have visitation with him; however, the trial court observed that Tester was not motivated to seek custody until this case began. According to Kolar, Tester declined opportunities to be involved in the pregnancy and he attempted to contact her only once regarding the child prior to the initiation of this case. While both parties have maintained regular contact with the child since the filing of the lawsuit and Tester has actively participated in visitation, we find this factor to weigh slightly in favor of Kolar.

### (d) Length of Time Surname Used

The minor child was five years old as of the time of trial and had started kindergarten. While five years is not a particularly long time, it does represent the entirety of the child's life. Kolar also testified that since starting school, the child was just learning that he is a Kolar. This factor weighs slightly in favor of Kolar.

### (e) Different Surname From Custodial Parent

The child's original surname was Kolar, which was the same surname as the child's custodial parent; therefore this factor favors Kolar.

### (f) Child's Preference

There was no evidence or testimony presented as to whether the child had a preference for one surname or the other. Accordingly, this factor will not be considered.

### (g) Effect of Change on Relationship With Parents

Tester testified that he believed changing the child's surname to Tester would improve their relationship. He also noted that the name Kolar "is not a blood name." Tester argued that because Kolar took her surname from her stepfather, it "[h]as no family ties to her, her family or mine." On the other hand, Kolar testified that she believed family was family and that "blood doesn't mean anything." She stated that she believed Kolar was a suitable surname for the child. We find this factor to be neutral.

### (h) Community Respect

There was no evidence or testimony presented that either surname is more or less respected in the community. We find that this factor is neutral.

### (i) Difficulties, Harassment, or Embarrassment

There was no evidence or testimony presented that either surname would cause the minor child any difficulties, harassment, or embarrassment. We find that this factor does not favor either party.

### (j) Identification of Child in Family Unit

Tester presented testimony that he believed changing the minor child's name would help him identify with his father and his older half-brother, whose surname is also Tester. We note, however, that Kolar also has another child, Isaac's younger half-brother, whose surname is Kolar. Kolar testified that she believed changing the child's name would make it more difficult for him because "[h]e is just learning who he is." She testified that the child "is going to know where he came from, who his dad is, who his mom is, everything." We find this factor is therefore neutral.

Overall, we find that the relevant factors either weigh in favor of Kolar or are neutral. At the time of trial, Kolar was the only party who had consistently maintained contact with and provided support for the child during the entirety of his life. She was also named as the custodial parent. The child had used his mother's surname for five years and had recently begun school, where he was known by the surname Kolar. As the party seeking the name change, Tester had the burden to show that changing the child's surname was in his best interests and that the child's substantial welfare required the name to be changed. We find that Tester did not meet this burden. Accordingly, we reverse the district court order granting Tester's request to change the child's surname.

### VI. CONCLUSION

Based on our review of the record, we find that the district court abused its discretion in awarding the dependency tax exemption solely to Kolar. Furthermore, we find the court erred in granting Tester's request to change the child's surname. We reverse the judgment and remand the cause on these issues with directions to enter an order consistent with this opinion. The remaining issues are affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.